(C. D. 401)

HARRISON CORP. v. UNITED STATES

United States Customs Court, Third Division

(Decided November 20, 1940)

*Lawrence & Tuttle* (*Charles F. Lawrence* of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., not participating

CLINE, Judge: This is a suit against the United States in which the plaintiff protests against the action of the collector in assessing duty on imported merchandise, giving as reasons for the protest the refusal of the collector to permit the importer to abandon or destroy merchandise entered as one cask of sherry wine. The pertinent parts of the protest read as follows:

The Collector of Customs, Port of San Francisco

Sir: Protest is hereby made against your liquidation or your decision assessing, imposing or collecting duty, fees, or other exactions, or excluding any merchandise from entry or delivery, or your refusal to reliquidate for clerical error, in connection with the entries or other matters referred to below. The reasons for objection under tariff act of 1930 are as follows:

On November 4, 1936, application was made by the undersigned to abandon certain merchandise, or alternatively to have it destroyed.

Your refusal to grant this application was improper. Said application should have been allowed under the authority of section 557 or section 563 (b).

It is further claimed that allowance for shortage should have been made under paragraph 813.

At the trial the plaintiff produced evidence showing that cask or barrel 10116 was landed from an importing vessel at Los Angeles and was thereupon shipped under bond to San Francisco. In April, 1936, the importer was called to the appraiser's stores in San Francisco to inspect the barrel and found that it was empty. In October, 1936, the importer authorized a letter which was written to the collector to abandon the barrel. A copy of that letter was admitted in evidence and marked "Exhibit 1." That exhibit, which is dated November 2, 1936, is addressed to the collector of customs at San Francisco. It

appears to be an application for abandonment of barrel 10116 under the authority of section 563 (b) of the Tariff Act of 1930 and articles 808 and 810 of the Customs Regulations of 1931. It is suggested in the letter that the merchandise be destroyed by incineration. The letter states also that sections 563 (b) and 557 of the Tariff Act of 1930 apply.

The plaintiff's witness produced also a copy of a letter from the Treasury Department sent to him by the collector of customs, but, upon objection by counsel for the defendant, it was not received in evidence. The letter was marked "Exhibit 2, for identification."

The witness produced also the notice he received from the collector, dated January 7, 1937, demanding payment of increased duty on the entry, amounting to $84.10. This notice was received in evidence and marked "Exhibit 3."

Counsel for the defendant moved to dismiss the protest on the ground that it was not filed within 60 days after liquidation. The motion was not acted upon by the judge presiding at the trial. The defendant urges in his brief that this motion should be granted by the court, citing *Hiram Walker & Sons, Inc.,* v. *United States,* 25 C. C. P. A. 189, T. D. 49293.

An examination of the protest shows that it bears the collector's receiving stamp dated February 2, 1937. The protest does not state the date of liquidation, but, under the word "liquidated" thereon appear the words "Decision denying application dated 12–14–36" as indicating the decision against which protest was filed. We have carefully examined the record and fail to find anything which shows the date of liquidation. The collector made no report and we do not find the details of the liquidation on the entry he forwarded to the court, which appears to be an unsigned copy of a warehouse entry bearing no indications that it was the official entry filed in the case.

Counsel for defendant asserts in his brief that the entry was liquidated on June 27, 1936, and directs attention to statements on an abandoned protest filed in the court against the classification of the merchandise on the same entry in which protest that date of liquidation is given. It is well settled, however, that the court cannot consider evidence not contained in the official record. In the case of *R. C. Williams & Co.* v. *United States,* 26 C. C. P. A. 210, C. A. D. 19, the appellate court held that the trial court erred in examining an appraiser's report attached to the consular invoice and other documents which the collector forwarded to the court with the papers in the case but which were not specifically offered in evidence. In the case of *United States* v. *Gilson Bros.,* 20 C. C. P. A. 117, T. D. 45753, the Government relied upon a special regulation of the Secretary of the Treasury to the effect that the collector need not designate 10 per centum of shipments of certain kinds of merchandise for examina-

tion. The court held that the Government had the burden of showing that regulation and that the burden was not on the importer to show an absence of such a regulation. So here, where defendant relies upon a motion to dismiss a protest on the ground that it is untimely, we hold that the burden is on the Government to produce competent evidence to show that the protest is untimely. As there is not sufficient evidence in the record to enable the court to pass intelligently on defendant's motion to dismiss the protest, said motion is denied.

The provisions of the Tariff Act of 1930 relied upon by plaintiff in his protest read as follows:

SEC. 557. * * * Merchandise entered under bond, under any provision of law, may, upon payment of all charges other than duty on the merchandise, be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and upon such destruction the entry of such merchandise shall be liquidated without payment of duty and any duties collected shall be refunded.

SEC. 563 (b) ABANDONMENT.—Under such regulations as the Secretary of the Treasury may prescribe and subject to any conditions imposed thereby the consignee may at any time within three years (or ten months in the case of grain) from the date of original importation, abandon to the Government any merchandise in bonded warehouse, whereupon any duties on such merchandise may be remitted or refunded as the case may be, but any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse (other than a bonded manipulating warehouse).

PAR. 813. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

The regulations of the Secretary of the Treasury in force at the time of the instant shipment with respect to sections 557 and 563 (b) are contained in article 810 of the Customs Regulations of 1931, as amended in T. D. 48099, reading in part as follows:

Art. 810 (a) Applications for the abandonment or destruction of merchandise in bond must be made in writing to the collector by the consignee or his duly qualified representative, and shall be stamped with the date of receipt in the customhouse. When an application is for permission to destroy, the proposed method of destruction must be stated and approved by the collector. Applications to abandon or destroy merchandise in warehouse must be concurred in by the warehouse proprietor.

(b) When, in the opinion of the collector, the abandonment of merchandise under section 563 (b), Tariff Act of 1930, will involve any expense or cost to the Government, or the merchandise is worthless or unsalable, or cannot be sold for a sum sufficient to pay the expenses of sale, the applicant may elect to destroy such

merchandise under customs supervision, pursuant to the provisions of section 557, and should be so informed. If the applicant does not so elect, he should be required to advance a sum which, in the opinion of the collector, will be sufficient to save the Government harmless from any expense or cost resulting from such abandonment. The sum so advanced will be placed in special deposit account and expended to cover the cost of destruction or to meet any deficit should the merchandise be sold and the proceeds of sale be less than the expenses of such sale. After meeting such expenses or deficit, any balance remaining will be refunded to the applicant. (T. D. 48099.)

In his application (exhibit 1) filed with the collector the importer offered to meet all the conditions imposed by article 810 of the customs regulations above quoted.

The plaintiff does not rely in his brief upon the provisions of paragraph 813 and it would seem from the fact that the proof does not show that the importer filed the affidavit required by that paragraph no further consideration of that provision is necessary.

Counsel for the plaintiff points out in his brief that the protest was filed within the statutory time after the collector's demand for payment of duties on January 7, 1937 (exhibit 3) and contends that the collector's decision as indicated by that document is subject to protest, citing La Montagne Bros., Inc. v. United States, T. D. 47918, 68 Treas. Dec. 372, in which the court held that a protest filed after such a demand was valid. The court said:

In the case at bar the demands were made by the collector, the payment thereof receipted for, and protests filed, all within the 60-day period. We hold that such protests are timely and Government motion to dismiss is overruled.

On the authority of the decision cited we hold that the protest in this case is valid, even though the plaintiff cites in his protest another decision of the collector, also within 60 days prior to the filing of the protest, against which the protest was filed.

The plaintiff cites authorities in his brief to the effect that, where merchandise is exported or destroyed under customs supervision, the collector should refund all the duty collected and that the collector erred in assessing duty on the amount of merchandise found at the time of importation in cases where the merchandise was gauged both at the time of importation and at the time of exportation or destruction. We quote from plaintiff's brief as follows:

This case is similar to Seggerman Nixon Corp. v. United States, Abstract 41760, wherein the court held that, where whiskey was abandoned to the government, it was not dutiable even upon the outage. To the same effect are La Montagne v. US, T. D. 47918, Sid Klein Corp. v. US, Abstract 36049, and Sullivan Corp. v. US, Abstract 41759, wherein it was held that when the entire shipment of warehoused whiskey was exported no duty accrued upon the outage occurring during the warehousing period. And in accord with each of these cases is Casazza v. US, 13 Cust. 627, T. D. 41481, wherein, on construing section 557, Tariff Act of 1922 (the predecessor of paragraph 557, Tariff Act of 1930), the court held that if

the collector's gauge was good for the purposes of exacting duty, it was also good for the purpose of abandoning the merchandise and escaping the duty.

The authorities cited by the plaintiff seem to sustain his contention that the collector erred in assessing duty on the merchandise herein involved. In *Casazza* v. *United States*, 13 Ct. Cust. Appls. 627, T. D. 41481, cited by the plaintiff, the court said:

We can not escape the conviction that the procedure adopted here by the collector is not doing complete justice to these importers. The collector did not regauge the wine when he reliquidated under the Tariff Act of 1922, but took the original gauge as correct. Upon what theory, then, can he justify his act in regauging it before he destroyed it? If the gauge is good for duty purposes, when money is to be taken from the purse of the importers, why is it not good when the importers seek to abandon and destroy their goods? Our customs laws, necessarily highly technical and calling for a close construction, are also intended, so far as may be possible, with due regard for the purposes for which such laws are enacted, to be just and fair. We have, on several occasions, suggested that all the Government ought to seek and obtain, is the duties which justly accrue, according to law, upon the goods which enter into the commerce of our country. Here the importers did all they could to comply with the law, and their bond should have been canceled upon the destruction of their goods by the collector.

The plaintiff in this case protested against the collector's "decision assessing, imposing, or collecting duty, fees, or other exactions." The reasons for his objections given in the protest are that the collector refused to grant his application to abandon or destroy the merchandise under the provisions of section 557 or 563 (b) both of which provide that the duties on the destroyed or abandoned merchandise shall be remitted or refunded.

The record does not show that there was any wine in cask 10116 at the time it entered the United States. The only notations we find on the withdrawal permit and entry are that the cask was "entirely empty." The plaintiff's witness testified that he examined the cask in the appraiser's stores in San Francisco and found that it was empty and that he did not know whether it was filled or empty at the time it arrived in Los Angeles. For all that appears in the record, the first time the cask was examined was when it reached the appraiser's stores in San Francisco and at that time it was found to be empty. Counsel for the defendant asserts that it was landed in good order but there is nothing in the record before the court to support that assertion. It has been held that the condition of the merchandise found by the appraiser is presumed to be the condition of it at the time it crossed the customs line, *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074. The court said:

While it is true under the ordinary hard and fast principle of substantive law that duties accrue upon imported merchandise at the exact moment they cross the line within the customs district, it is equally true that the whole framework of customs administrative law and regulations are constructed upon the principle

that, while duties actually accrue at the time stated, the ascertainment of the amount of duties which have thus and then accrued, and the amount of merchandise which has been imported, its condition, and in every respect its dutiable status, are ascertained as of the time they cross said line by examinations and inspections of their condition at the subsequent time of weighing, gauging, appraising, etc. It would be a physical impossibility to otherwise ascertain their dutiable status.

The same principle was applied in *W. X. Huber Co.* v. *United States,* C. D. 370, where the appraiser found that certain vegetables were worthless at the time of his examination.

No evidence was introduced in this case tending to show that cask 10116 was in any other condition at the time of landing than was found to exist at the time it was examined in the appraiser's stores.

The evidence shows conclusively that cask 10116 was entirely empty when it was examined by the appraiser, and, as that examination presumptively discloses its condition at the time it crossed the customs border, we find no reason why the collector should not have granted plaintiff's request to abandon or destroy the cask and remit or refund the duty thereon under the provisions of section 557 or 563 (b) of the Tariff Act of 1930. The protest is sustained. Judgment will be entered in favor of the plaintiff.