(C. D. 715)

HARRISON CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 24, 1942)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly* and *Joseph E. Weil*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This case is before the court on rehearing, having been previously considered in *Harrison Corp.* v. *United States*, 5 Cust. Ct. 214, C. D. 401. An application for rehearing filed by the defendant was granted on January 9, 1941 (Abstract 45194) and thereafter additional evidence was introduced in the case.

The invoice in the record covers two hogsheads of wine, two cases of cordials, and one case of bottle caps, labels, stoppers, etc. Warehouse entry was made at the port of San Francisco on April 29, 1936. The shipment was landed at the port of Los Angeles at which port a transportation entry was filed on April 20, 1936, and the merchandise was shipped to San Francisco by bonded carrier.

The record shows that when cask No. 10116 was examined by the appraiser at San Francisco it was found to be entirely empty but

the collector assessed duty thereon, amounting to $84.10, which is the amount applicable to 67.28 gallons of wine at $1.25 per gallon. The return was made under paragraph 804 of the Tariff. Act of 1930.

The protest reads as follows:

The Collector of Customs, Port of San Francisco

Sir: Protest is hereby made against your liquidation or your decision assessing, imposing or collecting duty, fees, or other exactions, or excluding any merchandise from entry or delivery, or your refusal to reliquidate for clerical error, in connection with the entries or other matters referred to below. The reasons for objection under tariff act of 1930 are as follows:

On November 4, 1936, application was made by the undersigned to abandon certain merchandise, or alternatively to have it destroyed,

Your refusal to grant this application was improper. Said application should have been allowed under the authority of section 557 or section 563 (b).

It is further claimed that allowance for shortage should have been made under paragraph 813.

The evidence taken at the original trial is summarized in our former decision as follows:

At the trial the plaintiff produced evidence showing that cask or barrel 10116 was landed from an importing vessel at Los Angeles and was thereupon shipped under bond to San Francisco. In April 1936, the importer was called to the appraisor's stores in San Francisco to inspect the barrel and found that it was empty. In October 1936, the importer authorized a letter which was written to the collector to abandon the barrel. A copy of that letter was admitted in evidence and marked "Exhibit 1." That exhibit, which is dated November 2, 1936, is addressed to the collector of customs at San Francisco. It appears to be an application for abandonment of barrel 10116 under the authority of section 563 (b) of the Tariff Act of 1930 and articles 808 and 810 of the Customs Regulations of 1931. It is suggested in the letter that the merchandise be destroyed by incineration. The letter states also that sections 563 (b) and 557 of the Tariff Act of 1930 apply.

The plaintiff's witness produced also a copy of a letter from the Treasury Department sent to him by the collector of customs, but, upon objection by counsel for the defendant, it was not received in evidence. The letter was marked "Exhibit 2, for identification."

The witness produced also the notice he received from the collector, dated January 7, 1937, demanding payment of increased duty on the entry, amounting to $84.10. This notice was received in evidence and marked "Exhibit 3."

At the original trial, counsel for the defendant moved to dismiss the protest on the ground that it was not filed within the time prescribed in section 514 of the Tariff Act of 1930 because it was not filed within 60 days after liquidation. The entry in the papers before the court at that trial was merely a copy and not an original and it did not contain any stamp showing the date of liquidation. The court denied the motion using the following language:

* * *. So here, where defendant relies upon a motion to dismiss a protest on the ground that it is untimely, we hold that the burden is on the Government to produce competent evidence to show that the protest is untimely. As there is not sufficient evidence in the record to enable the court to pass intelligently on defendant's motion to dismiss the protest, said motion is denied.

In the case now before the court on rehearing, the original entry is present. We note that two dates of liquidation are stamped thereon, namely June 27, 1936, and December 15, 1936, and the collector's demand for payment (exhibit 2) is dated January 7, 1937. The protest was filed on February 2, 1937, which is within 60 days of the last liquidation and also within the required time after the collector's demand, so it is apparent that the grounds for dismissal stated by counsel for the defendant are without merit. That motion was not pressed by the defendant on rehearing.

On the rehearing the defendant introduced, at the port of Los Angeles, the testimony of Mr. Grover Smith who is an inspector of customs at that port. He testified that he inspected the merchandise covered by Immediate Transportation Entry 2771, and papers covering that entry were admitted in evidence and marked collective exhibit A. He testified that he recognized his own handwriting in the lower left-hand corner of the exhibit. The notations are placed in a printed form having blank spaces in which words are inserted by lead pencil. The statement reads as follows, the words inserted in italics being the words which are written in lead pencil referred to by the witness:

To Collector: I certify that above-described goods were laden as stated above, sealed with Customs Seals Nos. *Labeled;* that the packages *were not* corded and sealed; that the goods agreed with the manifest and were in apparent good order except as noted.

Short or over from importing vessel or carrier. ———

*G. Smith*, Inspector.

*4/22/36.*

On cross-examination the witness testified that he is a lading inspector on the Southern Pacific Estacion; that he had no recollection of the transaction but if there had been anything wrong with the merchandise he would have made notation to that effect at the time; that he saw that every package was labeled, which is done by the carrier's agent of the Southern Pacific Co.; that "he [the agent] picks, loads each piece, and if there is any apparent damage he would call my attention to it, or if I saw any apparent damage I would have it examined and exception made"; that he does not keep any records; that the only thing he does in making a record of the transaction is to sign the I. T. manifest, which is the document in collective exhibit A.

On redirect examination the witness testified that there is no notation of damage on collective exhibit A, and, if there had been any damage, it was his duty to note it on the I. T. entry.

The case was then transferred to San Francisco for trial and the plaintiff called Mr. M. C. Harrison, the witness from the importing firm who testified in the original trial. The witness testified that he examined the merchandise in the appraiser's building immediately

after its arrival and that barrel "number 10116 was entirely dry, had no appearance of any moisture of any kind, but had a stave which was bent in a little where the two staves ordinarily come together" and that otherwise it was in apparent good order. When asked as to his opinion, from his experience, as to how long the barrel had been empty, he testified, "I will say that moisture coming through a stave or seeping through a stave or the head of a barrel would not disappear entirely within two or three weeks." He testified further that the barrel did not have the slightest moisture in it; that in his opinion it had been empty more than 2 or 3 weeks; that the shipment was landed in Los Angeles during a strike when merchandise could not be discharged in San Francisco and he ordered the Pacific Motor Transport Co. to bring the goods to San Francisco; that the bill presented by the Pacific Motor Transport Co. was for $7.87 which was based on a weight of 698 pounds on one cask and about 189 and a fraction pounds on the other; that he had been informed that the weights were taken at Los Angeles.

On cross-examination the witness testified that he made a claim against the Pacific Transport Co. for damage enroute between Los Angeles and San Francisco because "the ship insisted that they had a clean receipt for the goods, but the best knowledge that I can get the drayman gave no receipt at all, but someone else." The attention of the witness was directed to the following printed receipt on collective exhibit 1:

Received from the collector of customs of above district the merchandise described in this manifest for transportation and delivery into the custody of the customs officers at the port named above, all packages in apparent good order except as noted hereon.

Southern Pacific Company,
(signed) F. Wallace, *Attorney or Agent of Carrier.*

The witness was asked if he knew the person who signed the form and he stated that he did not but it evidently was not the truckman. On motion by counsel for the defendant the answer was stricken out by the judge presiding at the trial.

The pertinent provisions of the act of 1930 under which the plaintiff claims in the protest read as follows:

SEC. 557.    *       *       *       *       *       *       *

Merchandise entered under bond, under any provision of law, may, upon payment of all charges other than duty on the merchandise, be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and upon such destruction the entry of such merchandise shall be liquidated without payment of duty and any duties collected shall be refunded.

SEC. 563.

(b) ABANDONMENT.—Under such regulations as the Secretary of the Treasury may prescribe and subject to any conditions imposed thereby the consignee may

at any time within three years (or ten months in the case of grain) from the date of original importation, abandon to the Government any merchandise in bonded warehouse, whereupon any duties on such merchandise may be remitted or refunded as the case may be, but any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse (other than a bonded manipulating warehouse). •

PAR. 813. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

Counsel for the defendant cited *Agency Canadian Car & Foundry Co.* v. *United States*, 11 Ct. Cust. Appls. 19, T. D. 38637, in his application for rehearing, claiming that the decision of the court in the instant case is in conflict with that authority because the appellate court held in that case that Congress intended to permit an abandonment of merchandise only in cases where the merchandise was in a deliverable condition. In that case the merchandise consisted of empty shells imported for use in manufacturing ammunition. The merchandise was entered for consumption and was destroyed by fire or explosion, and, within 10 days after entry, the importers attempted to obtain a refund of the duty by abandoning the merchandise under the authority of paragraph X of section III of the Tariff Act of 1913. The court held that such procedure was not applicable because of the provision in paragraph X requiring that "all merchandise abandoned to the Government by the importers shall be delivered by the importers thereof at such place within the port of arrival as the chief officer of the customs may direct" and that, inasmuch as the merchandise was destroyed and could not be delivered to the Government officers, the importer was entitled to no relief.

On the other hand, in *Doull Miller & Co. et al.* v. *United States*, 25 Treas. Dec. 738, T. D. 34032, G. A. 7523, the court held that a claim for abandonment should have been allowed by the collector under subsection 22 of section 28 of the Tariff Act of 1909 (that section being the same as paragraph X of section III of the Tariff Act of 1913) where merchandise which the importer sought to abandon was damaged by sea water and was landed from the vessel in a pile on the dock, mixed with other goods, and remained under the control of the Government. That case was distinguished by the court in *Agency Canadian Car & Foundry Co.* v. *United States, supra*, but the principle adopted in the decision was not reversed.

Paragraph X of section III of the Tariff Act of 1913 and subsection 22 of section 28 of the Tariff Act of 1909 appear to be the prototype

provisions to section 506 of the Tariff Act of 1930, which section evidences a congressional intent to permit abandonment of merchandise entered *for consumption* whether or not the packages have been released to the importers. That section contains a provision requiring the importers to deliver the merchandise sought to be abandoned to such place as the collector directs. Section 506, however, is not involved in this case. The provision permitting abandonment of merchandise entered for warehouse is contained in section 563 (b). There is no provision for delivering abandoned goods to the collector either in that section or in article 810 of the customs regulations or the amendment thereof in T. D. 48099, presumably because the merchandise in bonded warehouse is already under the control of the customs officers. Therefore the ruling in *Agency Canadian Car & Foundry Co.* v. *United States, supra,* is not applicable. Neither does section 557 require that an importer deliver merchandise for destruction to the collector. That section, like section 563 (b), refers only to merchandise in bonded warehouse which is under the control of the collector until a permit of delivery for the goods is issued.

The record shows that the importing firm filed an application, dated November 2, 1936, to abandon barrel 10116 to the Government under the provisions of section 563 (b) of the Tariff Act of 1930, article 808, and article 810 of the Customs Regulations of 1931, as amended in T. D. 48099, and containing the additional provision that, in the event of a disallowance of the application to abandon, the merchandise be destroyed under the authority of section 557 and article 808, and article 810, as amended. The application proposes that the merchandise be destroyed by incineration, the importer agreeing to destroy it under customs supervision if the collector believes that the destruction would involve expense to the Government.

Counsel for the defendant argues in his brief that the plaintiff is not entitled to relief under either section 563 (b) or section 557 because the wine was not present for abandonment or destruction, as the cask was empty when it arrived in San Francisco. He claims that the plaintiff's remedy was under section 563 (a) or paragraph 813. The following is an excerpt from defendant's brief:

The difficulty with the plaintiff's position in the case at bar is that it is seeking relief under the wrong provisions of law. It should have sought relief under section 563 (a), as above stated, or an allowance under paragraph 813 of the Tariff Act of 1930. It, however, failed to comply with the requirements contained in said paragraph 813, in that there was not a gauger's return, verified by an importer's affidavit filed within 15 days after the delivery of the merchandise.

Paragraph 813, *supra,* permits an allowance for breakage, among other things, of wines, liquors, etc., when it shall appear to the Collector of Customs from the gauger's return, verified by an affidavit by the importer, to be filed within 15 days after delivery of the merchandise, that a cask or package had been broken or otherwise injured in transit from a foreign port, and, as a result thereof, a part of

its contents, amounting to 10%, or more, of the total value of the contents of the cask or package, in its condition as imported, had been lost.

In the case at bar, there was more than 10% of the merchandise lost; it was lost as a result of breakage, leakage, or damage; it was undisputed that the cask had been broken or otherwise injured. Whether the loss was occasioned before the merchandise arrived at Los Angeles, or occurred between Los Angeles and San Francisco, is immaterial.

We have examined the papers forwarded to the court by the collector in this case and find that counsel for the defendant is in error concerning a compliance with the requirements of paragraph 813. The papers include a report of the United States gauger, dated April 30, 1936, showing that cask 10115, having a capacity of 70 gallons, contained 60 gallons and that cask 10116, having a capacity of 70 gallons, contained nothing. There is also an affidavit of A. V. Hennig of the Harrison Corp. filed on May 1, 1936, noting the same contents of the casks shown in the gauger's report and claiming allowance for breakage under paragraph 813. There is also with the papers an oath of the importer on short shipment, dated April 30, 1936, on customs Form 4311. The plaintiff seems to have complied with the regulations under paragraph 813. The collector did not make any report to the court and we are not informed as to his reasons for rejecting the importer's claim under that paragraph.

As to the claim of defendant that the importer could have obtained relief under the provisions of section 563 (a) which provision provides for relief by application to the Secretary of the Treasury in cases where satisfactory proof is furnished of the loss or theft of merchandise while in the appraiser's stores or of the actual injury or destruction of merchandise by fire or other casualty while in bonded warehouse or in transportation under bond, we are of opinion that the provisions of section 563 (a) do not cover the instant case. The wine was not lost in the appraiser's stores, there was no loss caused by fire, and loss by leakage is not a casualty as that term has been defined by the courts. *G. B. Mastrangelo* v. *United States*, 15 Treas. Dec. 383, T. D. 28933, G. A. 6749.

In our original decision in this case, we found, in harmony with the authority of *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074, and *W. X. Huber Co.* v. *United States*, 5 Cust. Ct. 59, C. D. 370, that the condition of the cask at the time of examination by the appraiser presumptively discloses its condition at the time it crossed the customs border. The weight of evidence introduced on rehearing seems to sustain a finding that the cask was empty at the time of its discharge from the importing vessel because the plaintiff's witness testified that cask 10116 was perfectly dry when he examined it in the appraiser's stores soon after its arrival in San Francisco and that such a cask would contain moisture if wine had leaked out within

2 or 3 weeks prior to the time when he examined it. The papers show that the merchandise arrived in Los Angeles on April 17, 1936, and that it was entered for warehouse in San Francisco on April 27, so it must have been empty when it was landed. Furthermore, the witness testified that he paid a carrier's charge from Los Angeles to San Francisco on the basis of about 189 pounds on one cask and 698 pounds on the other and that the weights were taken in Los Angeles. According to the entry, the two casks covered by the importation were of the same size and the fact that both were supposed to contain wine, and there was such a difference in the weights of the two, would seem to support the contention of the witness that one of them was empty when it was loaded in Los Angeles for transportation to San Francisco. The Government inspector who supervised the loading at Los Angeles did not remember anything about the casks. He assumed that both casks were in good condition from the fact that he did not note any damage on his return on the manifest. He testified that it was the practice to have employees of the carrier put labels on such shipments and that the truckman would have called his attention to the cask if it was in a damaged condition. Witness Harrison testified that the only injury he found in the cask was that one stave was bent a little. Such a slight injury, when there was no appearance of leakage, might not be noticeable to an inspector who was merely checking a shipment being loaded for transportation to another port.

We find that the weight of evidence indicates that cask 10116 was empty when landed and, as stated in our original decision, "we find no reason why the collector should not have granted plaintiff's request to abandon or destroy the cask and remit or refund the duty thereon under the provisions of section 557 or 563 (b) of the Tariff Act of 1930." The protest is sustained. Judgment will be entered in favor of the plaintiff.