PARK & TILFORD *v.* UNITED STATES (No. 1924).[1]

1. ESTOPPEL—INVOICE.

Paragraph C of section 3, tariff act of 1913, requires that all invoices of imported merchandise "shall contain a correct, complete, and detailed description of such merchandise and of the packages, wrappings, or other coverings containing it." If the invoice of imported liquor states its quantity incorrectly, or does not state it, the importer has no right to complain if the capacity of the containers as reported by the gauger be accepted by the collector as the quantity in them at the time of exportation.

2. ARTICLES 612, 613, AND 614, CUSTOMS REGULATIONS OF 1915, REASONABLE, LEGAL, AND CONSTITUTIONAL.

Articles 612, 613, and 614, Customs Regulations of 1915, prescribing how quantities, losses, and outages of imported liquors shall be determined, are reasonable, legal, and constitutional.

3. ARTICLES 612, 613, AND 614, CUSTOMS REGULATIONS OF 1915, LEGISLATIVE SANCTION OF.

The rules laid down in articles 612, 613, and 614, Customs Regulations of 1915, for a the determination of quantities, losses, and outages of imported liquors had been promulgated and enforced prior to the enactment of the tariff acts of 1909 and 1913, and neither of these acts made any change in them. Legislative sanction of them will be inferred.

4. OUTAGE OF LIQUOR—HOW DETERMINED.

Where casks of whisky were found to contain less than that declared in the invoice, the collector assessed on the invoice quantity less 2½ per cent; where they were found to contain more, or where no invoice declaration of contents was made, upon the capacity of the casks less 2½ per cent. These assessments correctly interpreted articles 612, 613, and 614, Customs Regulations of 1915, and these articles are reasonable, legal, and constitutional.

United States Court of Customs Appeals, January 28, 1919.

APPEAL from Board of United States General Appraisers, Abstract 42213.

[Affirmed.]

*Hatch & Clute (Edward S. Hatch, Vincent P. Donihee,* and *Maurice W. Clarke)* for appellants.

*Bert Hanson,* Assistant Attorney General *(Bernard Edelhertz,* assistant attorney, of counsel), for the United States.

[Oral argument Nov. 6, 1918, by Mr. Donihee and Mr. Edelhertz.]

Before MONTGOMERY, SMITH, BARBER, DEVRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consists of whisky in casks. The importation was made under the tariff act of 1913.

The question at issue does not relate to the rate of duty assessed by the collector upon the importation, but to the quantity of whisky which was assessed with duty. The importers claim that the collector overstated the number of gallons of liquor in the respective casks, and based the liquidation upon this incorrect statement. The merchandise was assessed also with a countervailing duty, but this raises no new question in the case, the difference in this particular likewise being one of quantity only.

The Board of General Appraisers overruled the protests and the importers appeal.

According to the record, and according also to the appellants' petition in this court, the imported casks, in so far as they are now in dispute, divide themselves into three classes—to wit (a) casks which were found by the gauger to contain less liquor than the invoice called for; (b) casks which were found by the gauger to contain more liquor than the invoice called for; and (c) casks whose content gallons were not declared at all in the invoice.

In the first class of cases—that is, where the invoice quantity exceeded the quantity found in the casks by the gauger—the collector adopted the invoice quantity as the basis of assessment, deducting, however, 2½ per cent therefrom as normal outage. In the second class of cases—that is, where the gauger found more liquor in the casks than the invoice called for—the collector ignored the invoice statement and assessed duty upon the capacity of each cask as found by the gauger, less 2½ per cent for normal outage. In the third class of cases—that is, where the invoice contained no declaration as to the quantity contained in the casks—the collector likewise adopted the capacity of the casks as found by the gauger, less 2½ per cent normal outage, as the basis of assessment. This procedure resulted in each case in assessing duty upon a greater quantity of liquor than was found by the gauger to be actually in the casks upon their arrival in this country.

The importers contend that in each of these classes of cases the collector should have assessed duty only upon the actual contents of the casks as reported by the gauger.

At this point it seems proper to refer to paragraph 244, tariff act of 1913, which reads in part as follows:

And provided further, That there shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port, and as a result thereof a part of its contents amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported has been lost, allowance therefor may be made in the liquidation of the duties.

It will be observed that the foregoing enactment prohibits any constructive or other allowance for breakage, leakage, or damage on casks of liquor, except when it shall appear from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask has been broken or otherwise injured in transit from a foreign port, and as a result thereof a part of its contents amounting to 10 per cent in value or more has been lost, in which case allowance for the loss may be made in the liquidation of duties.

In the present case, however, the importers distinctly disclaim any intention of founding their protest upon the allowance for breakage provided for by the foregoing provision. There was indeed no report of the gauger that any of these casks had been broken in transit, but to the contrary they appear to have been received in good condition. Nor was any affidavit filed by the importers for the purpose of claiming an allowance under the terms of the proviso. In fact, the importers state in their brief that there was no leakage from any of the casks while in transitu. In respect to the casks whose contents were found by the gauger to be less than the quantity declared in the invoice the importers state that the actual quantity originally put in the casks some time before exportation had been reduced by evaporation before shipment, and that the invoice in fact declared the original contents of the containers without deduction for this evaporation. There is no satisfactory proof in the record of any loss before exportation.

The following extract from the brief of the importers in this court will explain this more fully:

The importations are all straight whiskies which have aged in the casks for years before their purchase abroad. As they age, the liquor evaporates. The casks are never opened, as the opening would allow an opportunity to blend.

The exact amount of evaporation is not always rightly computed. As a result, there was a difference of a few gallons, and in some cases fractions of gallons, in the amount stated in the invoice and the amount found by the gauger.

In the instances in which the invoices declared either more or less than the actual contents at importation, or failed to make any declaration as to the contents, the importers claim that the actual contents of the casks upon arrival should nevertheless govern the assessment.

It may be observed that no testimony was submitted by either side in the case, nevertheless the record itself discloses, as above stated, that assessment was made in each of the disputed instances upon greater contents than were actually found in the casks by the gauger upon importation, and that there was no report that any cask had been broken or otherwise injured in transitu.

It is clear that the method of assessment which was adopted by the collector was authorized by two Treasury regulations—to wit,

T. D. 26547, issued on June 27, 1905, and T. D. 27379, issued on May 28, 1906.

The following extract is from T. D. 26547:

The department will not acquiesce in the decision of the United States Circuit Court for the Southern District of New York of the 5th instant (T. D. 26488), holding that duty should not be assessed upon a greater quantity than that shown by the gauger's return to have actually arrived in this country, and it is therefore advisable that a uniform practice should be adopted at all of the ports in making allowance for the normal outage or wantage, which is defined by the Board of United States General Appraisers in T. D. 26086 of February 21, 1905, to be "the difference between the capacity of the cask or bottle and the quantity of wine or liquor which is usually placed in it according to the custom of the trade, a certain vacancy being allowed for the expansion of such wines or liquors."

As it appears from the report of the surveyor at your port that 2½ per cent of the capacity of such casks or barrels would be fair and equitable, and approximately represent the amount of unfilled space in such casks or barrels, the same is hereby adopted by the department as the wantage or outage to be allowed upon such importations of wines or liquors.

The following extract is from T. D. 27379:

It is the purpose of T. D. 26547 to fix a maximum deduction which may be made for shortages in importations of wines and liquors without making any allowance for breakage, leakage, or damage, for the reason that such an allowance is prohibited by the provisions of paragraph 296 of the act of July 24, 1897, and it appearing upon investigation that a shortage of 2½ per cent from the quantity shipped might be accounted for by evaporation, and causes other than breakage, leakage, or damage, such quantity was fixed as the maximum allowance that could be made upon such importations.

The quantity from which the allowance of 2½ per cent should be deducted is the quantity shipped. Such quantity is not necessarily the full capacity of the containers and should be stated upon the invoice. In order to arrive at the allowance to be made, the gauger should return the capacity of the containers and the quantity actually found therein, treating fractional gallons as above stated, and the entry should be liquidated upon the net gallons returned by the gauger, unless the same be more than 2½ per cent less than the quantity shipped, as shown by the invoice, in which case the entry should be liquidated upon the invoiced quantity less 2½ per cent. If it appears, however, that the invoice does not correctly state the quantity shipped, the invoice quantity should be ignored and the capacity of the containers taken as the basis from which allowance should be made.

These regulations were promulgated under the tariff act of 1897, but after the tariff revision of 1913 the Treasury Department reissued similar rules as articles 612, 613, and 614 of the Customs Regulations of 1915. The following is a copy of these articles:

ART. 612. *Broken or otherwise injured.*—The loss must not be merely the result of ordinary leakage, but must be occasioned by breakage or other injury. Unlading inspectors should particularly note whether casks or packages which are in bad order are broken or injured. When a cask or package arrives with loose staves or head pieces, breakage or injury will be presumed. Losses out of a package which has been plugged, but is otherwise in good condition, will be considered to be due to causes other than breakage or other injury.

ART. 613. *Contents in condition as exported.*—This is held to mean the invoiced quantities, provided specifications are given for each individual package, otherwise

the "contents reported" shall be held to be the gross capacities returned by the gauger.

ART. 614. *Outages.*—Outages not within the scope of the preceding articles by reason of being under 10 per cent or not being the kind of loss provided in the law, or by failure to file timely affidavit, will be subject to an allowance of 2½ per cent for normal outage from the capacity as shown by the gauger's return or the invoice quantity, according to the circumstances.

As appears from the foregoing regulations the department adopted the view that Congress, in enacting paragraph 244, intended to prohibit all actual or constructive allowance for outage or wantage in importations like the present, except only where a cask or other package has been broken or otherwise injured while in transit, in which case an allowance for the loss shall be made when the facts appear according to certain prescribed requirements.

It is manifest from a reading of the foregoing extracts that the action of the collector in this case was authorized and required by the Treasury regulations above quoted. These regulations explicitly require that in the absence of such leakage as may be allowed for under the proviso to paragraph 244, supra, the collector shall base the assessment upon the invoice quantity, less 2½ per cent normal outage, where that is greater than the actual quantity found by the gauger, and that in cases where the invoice quantity is less than that found by the gauger, or where the invoice fails to declare the quantity, the invoice shall be disregarded and the assessment based upon the capacity of the casks reported by the gauger, less 2½ per cent for normal outage.

The importers, however, contend that these regulations of the Treasury Department are unreasonable, illegal, and unconstitutional, since they have the result of assessing duty upon merchandise in excess of that actually imported into this country.

We do not think, however, that these contentions can be sustained. It is prescribed by the tariff act (par. C., sec. 3), administrative provisions, that all invoices of imported merchandise "shall contain a correct, complete, and detailed description of such merchandise and of the packages, wrappings, or other coverings containing it." It is certainly no forced application of this provision to require an importer of liquor in casks to declare in the invoice the correct quantity in each cask at exportation. In fact, it is difficult to see how the provisions of paragraph 244, supra, can be enforced or applied without such a declaration of quantity in the invoice. If an importer of liquor fails to make such a declaration in his invoice, or makes an incorrect one therein, he can have no right to complain if the reported capacity of the containers be accepted by the collector as the quantity in them at the time of exportation. It is equally clear that the importers in this case can not claim exemption from the duty of correctly declaring in the invoice the quantity shipped in the casks, because of the incon-

venience of gauging their casks before shipment, or the danger of blending which would result from that operation. The fact that the procedure prescribed by the foregoing regulations may result in assessing duty upon a larger quantity of liquor than is found in the casks at importation does not condemn the rule as unconstitutional. It may be observed that in paragraph 244, supra, Congress has provided that liquors imported in bottles shall be packed in packages containing not less than 1 dozen bottles in each package, or duty shall be paid as if such package contained at least one dozen bottles. This provision has been sustained by the courts, although it results in given cases in assessing importations of liquor at a greater quantity than actually imported. See Aurola v. United States (2 Ct. Cust. Appls., 340; T. D. 32077) and authorities therein cited. In fact, paragraph 244, supra, is founded upon the view that where importations of liquor arrive in this country duty may be assessed upon them at a larger quantity than that actually imported, in cases wherein the regulations governing such importations have not been obeyed.

According to the Treasury regulations, therefore, the collector was justified in finding that at the time of shipment the casks in question respectively contained a greater quantity of liquor than at the time of their arrival in this country, and that the shortage had not occurred from such causes as should be allowed for in view of the prohibitions of paragraph 244, supra.

Nor do we regard the Treasury regulations above cited when applied to outages accruing during transit as acts of legislation and therefore beyond the powers possessed by an administrative department of the Government. The rules prescribed therein appertain to practical methods of collecting the duties which Congress has imposed, and do not themselves tend to impose other duties. Furthermore, it may be noted that the Treasury rules in question were promulgated and enforced prior to the revisions of the tariff laws of 1909 and 1913, respectively, and that no change was made in the administrative provisions of either revision in reference thereto.

We are therefore of the opinion that the collector's assessment was lawful, and that the decision of the board sustaining it should be affirmed.

We have not overlooked the fact that the importers applied to the board for a rehearing of the case, which was refused them, and that this ruling is assigned as error in the petition filed in this court. We think that the decision upon the issues as given above sufficiently disposes of this, and that in any event no abuse of discretion upon the part of the board appears in the ruling in question.

*Affirmed.*