(C. D. 1155)

Austin, Nichols & Co., Inc. *v.* United States

## United States Customs Court, Third Division

(Decided February 1, 1949)

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff·
*David N. Edelstein,* Assistant Attorney General (*William J. Vitale,* special
attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J.,
concurring in the result; EKWALL, J., concurring

JOHNSON, Judge: The merchandise the subject of this suit consists of distilled dry gin imported from Cuba. Duty was assessed at the rate of $2 per gallon of 100 proof under the provisions of paragraph 802 of the Tariff Act of 1930, as amended by the trade agreement with the United Kingdom, 54 Stat. 1897 (T. D. 49753), wherein the tariff rate was reduced from $5 per proof gallon to $2.50 per proof gallon. Having been imported as a product of Cuba, the trade agreement with Cuba, 49 Stat. 3559 (T. D. 47232), became operative as to the 20 per centum preferential rate granted such products under the terms of that agreement, thus reducing the duty to $2 per proof gallon.

The plaintiff claims that duty was levied upon a quantity in excess of the amount found upon importation; that duty should have been assessed upon the quantity of gin cleared from the free zone; and that there was no breakage, leakage, or damage. At the trial the protest was amended to include the further claim that—

\* \* \* customs duties should be assessed and collected only on the quantity of liquor or other beverages, subjected to final assessment of Internal Revenue Taxes, pursuant to Public Law No. 612.

At the trial counsel for both sides agreed to the following facts:

MR. COLBURN: \* \* \* That the merchandise herein consisted of 50 wooden barrels, containing distilled dry gin, a product of Cuba, entered for consumption from Foreign Trade Zone #1 after being weighed and sampled. Liquidation was based on the gauger's and laboratory report;

That Internal Revenue Tax at $9 per gallon was assessed on a net quantity equal to 2,474.4 proof gallons; that Customs duty at $2 per gallon was assessed on a net quantity of 2,494.52 proof gallons.

\*         \*         \*         \*         \*         \*         \*

MR. VITALE: \* \* \* After carefully studying the official file in this case, and conferring with the Customs officials, the Government is willing to so stipulate.

The plaintiff relies upon the claim that by reason of the enactment of Public Law 612 duties should have been collected only upon the quantity subject to the final assessment of internal revenue taxes. Public Law 612 originated in the House of Representatives through

the introduction of a bill, H. R. 5965, on March 23, 1948. It was referred to the Ways and Means Committee where same was reported favorably with an amendment on May 11, 1948, and brought up for consideration in the House of Representatives on May 18, 1948. This bill, in effect, repealed paragraph 813 of the Tariff Act of 1930, and reduced the duties on alcoholic beverages by imposing duties only on quantities subject to internal revenue taxes. Furthermore, the amendment under Public Law 612 was retroactive in effect, inasmuch as it not only applied to future importations but included such alcoholic beverages as were covered by entries the collector had liquidated where the collector's action had not become final by reason of the filing of protests against such action. Under section 514, a protest may be filed against the action of the collector within 60 days after liquidation. The filing of a protest has the effect of holding in suspension the conclusiveness of the liquidation against all parties until after final decision by the courts becomes effective, whereas without protest having been filed, a liquidation of the collector becomes final and conclusive against all parties 60 days thereafter.

The enactment of H. R. 5965, which became known as Public Law 612, removed all restrictions against allowances of duties granted in paragraph 813 and placed liquor imports on a basis more liberal than on other goods. Imports of alcoholic beverages have been restricted and controlled from the time of the passage of the first tariff act in 1789. At that time, duty was assessed upon every gallon of alcoholic distilled spirits imported and direct controls as to leakage were applied in 1799.[1]

Looking to the debates in the Congress in order to ascertain the intent of our lawmakers in the enactment of Public Law 612, elevating alcoholic beverages to a preferred class of imports, there appears to have been no discussion whatever of the questions involved in either the House or the Senate. The only information concerning the action of the House of Representatives, where the bill originated, appears on page 6156 of the Congressional Record of May 18, 1948. The writer of this opinion, having had extended service in the Congress, recognizes that it is not only impractical, but impossible, for members of that distinguished body to familiarize themselves with the details of the multiplicity of measures presented for consideration at every session of the Congress. Moreover, it is well-understood that during the closing weeks of any Congress many so-called minor bills are rushed through without debate and without roll call. During every session of the Congress in which the writer of this opinion had the honor of serving, representatives of powerful interests have sought to

---

[1] Section 59, March 2, 1799 (1 Stat. 627/673); section 21, Tariff Act of 1870; schedule H, Tariff Act of 1883; Tariff Act of 1890, paragraph 336; Tariff Act of 1894, paragraph 244; Tariff Act of 1913, paragraph 244; Tariff Act of 1922, paragraph 812; Tariff Act of 1930, paragraph 813.

impose upon that great legislative body by sponsoring legislation vital to their welfare under the guise of "innoxious measures" or "innocent amendments." Whether or not H. R. 5965 falls within that category is not pertinent to the issue involved before this court. The following information is all that may be gleaned from the Congressional Record at the page noted:

### AMENDING PARAGRAPH 813 OF THE TARIFF ACT OF 1930

The Clerk called the bill (H. R. 5965) to amend paragraph 813 of the Tariff Act of 1930.

There being no objection, the Clerk read the bill * * *;

\*      \*      \*      \*      \*      \*      \*

With the following committee amendment:

\*      \*      \*      \*      \*      \*      \*

The Committee amendment was agreed to.

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

No further explanation was given by the committee as to the rea intent of the measure, which, it must be admitted, is far-reaching in its effect.

A copy of H. R. 5965, as reported by the Committee on Ways and Means of the House of Representatives, showing committee changes made in the bill, was admitted in evidence as exhibit 1. Report No. 1919 of that committee on H. R. 5965 was admitted as exhibit 2. Report No. 1421 of the Senate Committee on Finance on House Bill H. R. 5965 was admitted in evidence as exhibit 3, and a copy of Public Law 612, approved June 8, 1948, was admitted in evidence as exhibit 4. No other evidence was offered by either the plaintiff or the Government and the case was submitted for decision upon briefs to be filed by each party. However, the Government elected not to file a brief in view of the record and plaintiff's brief.

The report of the Committee on Ways and Means of the House of Representatives,[2] exhibit 2, recommending the enactment of the bill

---

[2] REPORT

[To accompany H. R. 5965]

The Committee on Ways and Means, to whom was referred the bill (H. R. 5965) to amend paragraph 813 of the Tariff Act of 1930, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

\*      \*      \*      \*      \*      \*

GENERAL STATEMENT

This bill has been designed to remove discriminations and to facilitate the collection of duties on liquors. The effect of the bill is to provide a dutiable basis for liquor products imported under bond the same as is now used for the assessment of internal-revenue taxes upon such liquor. The provision under present

into law, described the legislation as having been designed *to remove discriminations and to facilitate the collection of duties on liquors,* in that it would permit allowance for losses occurring while the liquor was in transit to the United States, as well as losses occurring after importation but before being released for consumption. It is noted that the House report quotes at some length from the Treasury Department report on the proposed legislation, particularly stressing the purported administrative difficulties arising on account of assessments of duty on imported liquors being made on a different basis than the assessment of internal revenue taxes, necessitating "a multiplicity of gagings and redeterminations."

---

paragraph 813 of the Tariff Act of 1930 is for the assessment of duties on the basis of quantities exported rather than on the basis of the quantities imported. This is an exception to the usual rule of our customs law.

Before 1883, the law provided a system of arbitrary allowances or provisions for deductions in duty on account of losses by leakage, etc. However, the Congress of 1883 (22 Stat. 505) provided that "there shall be no allowances for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits." The Attorney General ruled that where there was leakage or other loss during the importation, allowance for such actual loss should be made in liquidating the entry. The Tariff Act of 1890 and subsequent acts continued the prohibition against allowances but modified the language so as to prohibit "constructive or other allowances." The Solicitor recognized the injustice done to importers by this requirement but concluded that the language of the law left no alternative.

In the Tariff Act of 1913, the general prohibition against allowances was continued although a provision was added for allowance in the case of losses occurring during the importation provided they amounted to 10 percent or more of each particular cask or package.

Under existing law an importer who has purchased a case of 12 quarts of spirits must pay duty on the basis of 3 gallons even though 1 bottle was broken on the voyage of importation so that only 2¾ gallons were entered, but if 2 bottles were broken in a case of 12 and the proper affidavit filed he would have to pay duty only on the basis of 2½ gallons. There appears no sound reason for this distinction in the law today although it may have been warranted at the time of its adoption. The probability of fraud is no basis for the distinction because the law permits allowances where there is a relatively large loss.

Enactment of the bill would eliminate the discrimination against liquors as compared with the procedures followed in determining the dutiable quantities of other commodities, in that it would permit allowance for losses occurring while the liquor was in transit to the United States. In addition, it would permit allowance for losses occurring after importation but before the goods had been released from bond for consumption.

The following excerpt is taken from the report of the Treasury Department:

The Treasury Department recommends the enactment of such a bill as it would relieve the Bureau of Customs of the present administrative difficulties which result from the assessment of duties on imported liquors on a basis differing from that it is required to use by virtue of section 2800 (a) (1) of the Internal Revenue Code in assessing internal-revenue taxes on such liquors. Broadly speaking, paragraph 813 of the tariff act requires that duties be assessed on the quantity of liquor shipped from the foreign country whereas under section 2800 (a) (1) internal-revenue taxes are assessed on the quantity actually delivered to the importer. This results in the serious administrative difficulties attendant upon a multiplicity of gagings and redeterminations.

Favorable reports were received from other Government agencies and there has been no opposition to the bill. The committee unanimously recommend that the bill do pass.

### CHANGES IN EXISTING LAW

In compliance with paragraph 2a of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as introduced, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italics, existing law in which no change is proposed in [sic] shown in roman):

* * * * * * *

The Senate report of the Committee on Finance,[3] exhibit 3, besides restating the report of the Committee on Ways and Means, also recommended that favorable action be taken upon the bill, declaring that the measure was needed to solve the difficulty of imposing duties on quantities of beverages which are lost through leakage, breakage, etc., while being transported into this country or before release from bond for consumption.

Counsel for the plaintiff, relying solely upon Public Law 612, points out that the entry in the shipment in question was liquidated on October 31, 1945, and the protest was filed on November 16, 1945. Counsel stresses the fact that the filing of the protest operated to prevent the liquidation of the entry from becoming final by reason of section 514 of the Tariff Act of 1930.[4] Inasmuch as the liquidation has not become final by reason of a protest against the collector's liquidation having been filed in accordance with section 514, the *sole contention* of counsel for the plaintiff is that the provisions of Public Law 612 *automatically apply to any merchandise involving alcoholic beverages covered by protests* pending before this court.

---

[3] AMENDING PARAGRAPH 813 OF THE TARIFF ACT OF 1930

---

May 27 (legislative day, May 20), 1948.—Ordered to be printed

---

MR. MILLIKIN, from the Committee on Finance, submitted the following

REPORT

[To accompany H. R. 5965]

The Committee on Finance, to whom was referred the bill (H. R. 5965) to amend paragraph 813 of the Tariff Act of 1930, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

This bill provides that, in imposing import duties on beverages which are also subject to internal revenue taxes, import duties shall be imposed on only the quantities subject to internal revenue taxes. This means that import duties will not be imposed on quantities of beverages which are lost through leakage, breakage, etc. while being transported into this country or before release from bond for consumption.

\* \* \* \* \* \* \*

[4] SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of an entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

Paragraph 813 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938,[5] provided for the method used in assessing duty upon wines, liquors, cordials, or distilled spirits, before the passage of Public Law 612. Thereunder, all losses occurring by reason of breakage or other damage to the container were authorized if the importer filed an affidavit verifying the report of the gauger as to the quantity and condition of broken or injured casks or packages landed in the United States. Losses not occurring by reason of injury to the casks or packages were not authorized. Nor was there an authorization for any loss even through breakage or other injury if the loss did not amount to 10 per centum of the value of the goods, as exported.

As a matter of law, importations of liquors which do not involve such losses as were provided for under paragraph 813 are to be assessed with duty upon the basis of the gallonage reported by the gauger, acting within the scope of the regulations, as having been landed in this country.[6] Where there are losses which amount to a nonimportation, no duty, of course, is assessable.[7]

Public Law 612,[8] exhibit 4, is *novel* in that it *departs* from the *long-established principle* that duties shall not be assessed upon less than the imported or entered quantity. Hereafter, duties upon alcoholic beverages must be imposed upon the quantities which are subject to the levy of an internal revenue tax. Title 26, § 2800, U. S. Code, as

---

[5] PAR. 813. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within fifteen days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

[6] *United States* v. *Sherbrook Distributing Co.*, 33 C. C. P. A. 161, C. A. D. 330.

[7] *United States* v. *Browne Vintners Co., Inc.*, 34 C. C. P. A. 112, C. A. D. 351.

[8] [PUBLIC LAW 612—80TH CONGRESS]

[CHAPTER 425—2D SESSION]

[H. R. 5965]

AN ACT

To amend paragraph 813 of the Tariff Act of 1930.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That paragraph 813 of schedule 8 of the Tariff Act of 1930 is amended to read as follows:

"PAR. 813. Notwithstanding any other provision of this Act, the duties imposed on beverages in this schedule which are subject also to internal revenue taxes shall be imposed only on the quantities subject to such taxes."

SEC. 2. This amendment shall be effective as to all such merchandise entered, or withdrawn from warehouse, for consumption on or after the day following the date of the enactment of this Act and shall apply also to any such merchandise entered or withdrawn before that day with respect to which the liquidation of the entry or withdrawal, the exaction, or the decision as to dutiable quantity has not become final by reason of section 514, Tariff Act of 1930.

Approved June 8, 1948.

amended, relative to the internal revenue tax upon distilled spirits, provides:

§ 2800.   Tax—(a)   Rate—(1)   Distilled spirits generally.

*There shall be levied and collected on all distilled spirits* in bond or produced in or *imported into the United States an internal revenue tax* at the rate of $6 *on each proof gallon or wine gallon* when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, *to be paid by the* distiller or *importer when withdrawn from bond.*   [Italics not quoted.]

(Title 26, § 1650, war tax rates of certain miscellaneous taxes, increased the tax on distilled spirits to $9 per proof gallon.)

As held in the decision, as promulgated, of *Gelpi* v. *United States*, 4 Cust. Ct. 373, Abstract 43072, internal revenue taxes are imposed upon liquors in bond, whether imported or domestic, upon the basis of the quantity shown by the gauge at the time they are withdrawn from customs bonded warehouses or public stores for consumption. Thus, under the broad language of Public Law 612, all liquors are dutiable upon quantities withdrawn from customs warehouses or public stores for consumption.   It is therefore apparent that instead of removing discriminations, as the title of Public Law 612 indicates, and as stated in the report of the Customs Bureau of the Treasury Department, on which the committees of the Congress must depend for factual information in such matters, *the law actually discriminates in favor of imported liquors as compared with other imports.*

The principle of law is well-established that merchandise, particularly that which is subject to a specific rate of duty, is dutiable upon the basis of the landed quantity, whether it is entered for consumption or warehouse.[9]   In imports of alcoholic beverages, the landed quantity was also essential in order that the collector may determine the basis of his assessment of duty.[10]   A later withdrawal from warehouse does not necessitate a regauge or recount of the quantity.[11]   Duties are invariably levied against any deficiency.

In conformity with Public Law 612, the Treasury Department amended the Customs Regulations of 1943 as follows: Section 15.9, prescribing that merchandise shall be gauged on entry and before delivery to a bonded warehouse, and providing for allowances in duties for losses which occurred prior to the gauging, etc., was deleted. *Section 16.5, relating to the weight, gauge, or measure, originally prescribed that customs duties shall be collected on the gallonage determined upon the basis of the original customs gauge.   As amended, the regulations provide that duties and internal revenue taxes on imported alcoholic*

---

[9] *Marriott* v. *Brune*, 9 How. 619; *United States* v. *Southmayd*, 9 How. 637; *Lawrence* v. *Caswell*, 13 How. 488; *Manhattan Gas-Light Cʰ.* v. *Maxwell*, 16 Fed. Cases 600; *United States* v. *Nash*, 27 Fed. Cases 75; *Balfour* v. *Sullivan*, 17 Fed. Rep. 231; *Weaver* v. *Saltonstall*, 38 Fed. 493; *Fachri* v. *Magone*, 53 Fed. 789; *Downing* v. *United States*, 11 Ct. Cust. Appls. 310, T. D. 39128.

[10] *Park & Tilford* v. *United States*, 9 Ct. Cust. Appls. 53, T. D. 37906.

[11] *United States* v. *Siegfried Lowenthal Co.*, 31 C. C. P. A. 19, C. A. D. 244.

*beverages shall be collected only on the number of proof gallons (or wine gallons if below proof), etc., which are entered or withdrawn for consumption.* Section 16.5 (e), which noted that when a regauge was made of warehoused spirits for the purpose of assessing internal revenue taxes upon the withdrawn quantities, no adjustment of customs duties was to be made as a result of such regauge, was also deleted. (See Customs Regulations of 1943, as amended, T. D. 51944, June 16, 1948.)

It might be pointed out in this connection that the regulations affecting the allowances to be granted by reason of the short shipment of merchandise generally, will no longer apply to spirits used for beverage purposes. Under the Code of Federal Regulations, Cumulative Supplement, Title 19, section 15.8, allowance by the collector in the assessment of duties is prohibited upon lost or missing packages appearing upon the entry unless shown by the report of the discharging officer, and unless an affidavit of shortage is filed with the collector within 30 days. Allowances in unexamined packages are similarly restricted.

The original claims made in the protest in question for the return of duties illegally exacted excluded any relief which may have been granted under the provisions of paragraph 813 because of the assertion that there was no breakage, leakage, or damage involved. Therefore, any relief from the assessment of excessive duties would be predicated upon the introduction of substantial evidence to establish that there was a nonimportation or short shipment of the goods. See *United States* v. *Browne Vintners Co., Inc.*, 34 C. C. P. A. 112, C. A. D. 351. However, the amendment to paragraph 813, by Public Law 612, so broadens that paragraph that it becomes no longer necessary to establish that the quantities shipped were less than the invoice quantities, or that in the landed quantities a shortage was caused through an injury to the containers. As customs duties now are to be assessed upon the quantities of alcoholic beverages withdrawn from bond, which are in fact the quantities entering consumption, it would seem unnecessary to take any cognizance of the amount of goods invoiced, entered, or landed in the United States.

Heretofore, it has been essential to determine the amount of goods landed in the United States in order to arrive at the quantities to be used for duty purposes. Until the enactment of Public Law 612, changing the basis of assessment of duties upon alcoholic beverages, the duties upon all merchandise brought within the customs district with intent to unlade, even if lost in the harbor through the sinking of a carrier, were required to be paid. This well-established fundamental principle of substantive law applied to all merchandise entering the line of a customs district. See *United States* v. *Lyman*, 26 Fed. Cases 1024; *Belcher* v. *Linn*, 24 How. 508; *Schnell* v. *United States*,

40 Treas. Dec. 257, T. D. 38914, G. A. 8482. Now, with the passage of this latest amendment, we have a deviation from the long-established rule, an anomaly under the law, in that liquor, which is subject to a strict license and control in the United States, and prohibited from sale in some States, is placed in a preferred class of imports in that it is excluded from the requirement that duties shall be imposed on the basis of the landed quantities.

This commodity, of course, is a liquid, and subject to evaporation. It is also subject to leakage, and as large quantities thereof are packed in wooden casks and glass bottles, it is subject to breakage. Alcoholic beverages which are aged in the wood sometimes shrink to a remarkable degree. The shrinkage in volume naturally would enhance the value of the whisky or other distilled spirits for blending purposes. Inasmuch as duty upon such alcoholic beverages is specific, and calculated by the volume rather than by the value as in the case of ad valorem duty goods, the Government had no other method of obtaining a duty commensurate with the value of the alcoholic beverage than to take duty in the case of undue shrinkage upon the capacity of the container, less a nominal outage of 2½ per centum. See *Park & Tilford* v. *United States*, 9 Ct. Cust. Appls. 53, T. D. 37906.[12] Under Public Law 612, the long-continued remedy of equalizing the duty commensurate with the value has been removed.

Actually the importer knew what he was buying and evidently was satisfied with the purchase under conditions which prevailed before the amendment of paragraph 813, else such enormous foreign purchases would not have continued. Over the years, this practice of assessing duty upon the basis of the invoice quantities has been recognized not only as legal but also as fair and equitable. The only exception to this rule is where the casks were purposely not filled to capacity, as in the case of *United States* v. *Sherbrook Distributing Co.*, 33 C. C. P. A. 161, C. A. D. 330, where duty was held to be assessable upon the quantity found by the gauger.

That Public Law 612 will save the liquor interests of the United States thousands of dollars annually, heretofore legally paid in duties into the Treasury of the United States, there can be no question. Under the "innocent amendment" heretofore referred to, all alcoholic

---

[12] * * * In respect to the casks whose contents were found by the gauger to be less than the quantity declared in the invoice the importers state that the actual quantity originally put in the casks some time before exportation had been reduced by evaporation before shipment, and that the invoice in fact declared the original contents of the containers without deduction for this evaporation. There is no satisfactory proof in the record of any loss before exportation.

The following extract from the brief of the importers in this court will explain this more fully:

The importations are all straight whiskies which have aged in the casks for years before their purchase abroad. As they age, the liquor evaporates. The casks are never opened, as the opening would allow an opportunity to blend.

The exact amount of evaporation is not always rightly computed. As a result, there was a difference of a few gallons, and in some cases fractions of gallons, in the amount stated in the invoice and the amount found by the gauger.

beverages which enter this country, and are lost for any reason before entering consumption, are not subject to the imposition of duties. It would seem reasonable to suggest that importers dealing in this class of merchandise should be required to pay for the losses that shipments of this character invariably engender in the same manner as other importers are required to do under the law. The burden of loss of such revenue naturally falls directly upon the people as a whole.

Public Law 612 not only limits the imposition of duty upon alcoholic beverages to such quantities as are subject to the imposition of internal revenue taxes, but it is retroactive. Section 2 thereof returns to importers duties already collected upon beverages which not only have long since gone into consumption, but which, under the law in force at the time of entry, were rightfully exacted, and the return of which, even at the time protests were filed, were not contemplated by the importers. Section 2 of said law is operative as to any liquidation of duty upon alcoholic beverages, no matter how much time has elapsed since made, providing such liquidation is under protest filed by the importer, even though Public Law 612 was not the pertinent claim therein. Under the law as it now stands, it is mandatory that such liquidations shall be reliquidated and duties assessed only upon quantities subject to the levy of internal revenue tax.

The amendment of the law in question, purportedly designed to facilitate the collection of duties upon alcoholic beverages, evidently does not accomplish that result. In the first place, duties upon entries already liquidated, upon which protests have been filed, have already been paid. In the second place, the final computation and collection of all duties upon such beverages are delayed until such time as the portions still remaining of the quantities imported are about to be withdrawn for consumption. Therefore, it is evident to the writer of this opinion that the effect of Public Law 612 not only delays the collection and determination of the amount of duties due the Government, but its retroactive feature neither removes discriminations nor facilitates the collection of duties. Consequently, it is plain that section 2 of said law hands back to liquor importers thousands of dollars in duties legally levied in such cases.

In view of section 2 of Public Law 612, amending paragraph 813, this court is without any authority other than to sustain the plaintiff's contention.

For the reasons stated, and *solely because of the amendment* of the law referred to, this court is constrained to enter judgment in favor of the plaintiff.

## CONCURRING OPINION

CLINE, Judge: I concur in the result.

CONCURRING OPINION

EKWALL, Judge: I agree with the opinion of the court that the protest in this case should be sustained. Inasmuch as Congress has amended the law (paragraph 813 of the Tariff Act of 1930) in plain and unambiguous language to the end that customs duties imposed on beverages provided for in schedule 8 of said act shall be assessed only upon the quantities subject to internal revenue taxes, any other conclusion than that arrived at by the writer of the opinion, in which the history of the legislation is thoroughly set forth, would be contrary to the wording and intent of the law.