(C. D. 1322)

BARDINET EXPORTS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 17, 1951)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General, for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: This action pertains to certain alcoholic beverages which were abandoned to the Government for destruction. The protest was filed against the collector's allowance of credit on 32 barrels destroyed under a manipulation permit. The importer claims in its protest that the allowance granted for the 32 barrels so destroyed should be 2,299.70 proof gallons for duty purposes and 2,228.50 proof gallons for internal revenue purposes, in accordance with the original liquidation, rather than the allowance the collector granted of 1,913.83 proof gallons for duty purposes and 1,913.9 proof gallons for internal revenue tax purposes shown by the regauge of quantity prior to destruction. A motion to amend was duly filed wherein—

It is further claimed that a greater duty and/or tax allowance for abandonment or destruction should have been made upon reliquidation in accordance with the duties and taxes assessed upon liquidation.

It is further claimed that duties should be assessed only upon the same quantities as for internal revenue tax purposes, and that you failed to make a proper allowance in duties for the quantities destroyed or abandoned in warehouse, based upon the quantities assessed with taxes—Section 813, Tariff Act of 1930, as amended by Public Law 612, 80th Congress.

The collector's answer to protest discloses that the entry was liquidated on December 4, 1944, without any allowance for shortage for the reason that the merchandise was landed intact at the port of New York and transshipped under an immediate transportation permit to the port of Philadelphia. Upon reliquidating the entry, an allowance was made in duties by the collector for 1,913.83 proof gallons and in tax for 1,913.9 proof gallons.

The following stipulation was entered into between the parties:

It is hereby stipulated and agreed by and between the attorneys for the parties hereto:

(1) That the merchandise covered by Philadelphia warehouse entry no. 295 dated July 31, 1944, consists of 125 barrels of spirits imported at New York from Cuba and transferred in bond to Philadelphia, Pa., without being released from customs custody or control under I. T. entry no. 655, subject to duty at $2.00 per proof gallon under Paragraph 802, Tariff Act of 1930, as modified by the Reciprocal Trade Agreement with Cuba, T. D. 50050, plus $9.00 per proof gallon under Section 2800 (a) (1) of the Internal Revenue Code.

(2) That said 125 barrels of Cuban spirits were gauged by the official U. S. gauger at Philadelphia on August 25, 1944 while in bonded warehouse and prior to release from customs custody, that said warehouse entry 295 covering said 125 barrels of Cuban spirits was liquidated on December 4, 1944 in accordance with the quantities of spirits for tax purposes amounting to 8878 proof gallons, and for duty purposes amounting to 8993.56 proof gallons, as found by the U. S. gauger on August 25, 1944.

(3) That said 125 barrels of Cuban spirits were reported "no exceptions" (meaning barrels in good order) by the U. S. customs inspector at New York, but that the U. S. government inspector at Philadelphia made the following report upon the arrival of the merchandise at Philadelphia: "Merchandise imported in apparent good order except as noted":

| Barrels Reported Slack | Barrels Reported Leaking | | Barrels Reported Empty |
|---|---|---|---|
| 74 | 54 | 124 | 55 |
| 39 | 53 | 70 | |
| 122 | 105 | 43 | |
| 25 | 59 | 102 | |
| | 108 | 9 | |
| | 58 | 10 | |
| | 48 | 50 | |

(4) That on November 29, 1946, the importer, Bardinet Exports, Inc., filed an application for a certificate of importation for drawback purposes upon five barrels of spirits nos. 25, 53, 63, 75 and 107 covered by said entry no. 295, and the plaintiff hereby abandons this protest insofar as it relates to the said five barrels of spirits.

(5) That the importer, Bardinet Exports, Inc., filed an application to destroy the spirits contained in 32 barrels covered by warehouse entry 295 under the provisions of Section 563 (b) or Section 557 (c), Tariff Act of 1930, which 32 barrels are enumerated and identified on the attached Schedule "A" which is made a part of this stipulation; that said spirits were destroyed under customs supervision and prior to release from bonded warehouse and from customs custody; and that all applicable regulations of the Treasury Department relating to the destruction of such spirits were complied with to permit a cancellation or a refund by customs officials of the duties and taxes on the said spirits.

(6) That on January 18, 1946, prior to the actual destruction of the spirits contained in said 32 barrels, the official U. S. gauger regauged the spirits contained in said 32 barrels while in bonded warehouse and prior to destruction or release from customs custody and found present the quantities of spirits for duty

and tax purposes as specified in detail in the attached Schedule "A" amounting to a total of 1256.19 wine gallons, or 1913.83 proof gallons for duty purposes and 1913.9 proof gallons for tax purposes, at an average proof of 152.35.

(7) That the quantities of Cuban spirits contained in said 32 barrels of Cuban spirits, assessed with duties and taxes upon the liquidation of December 4, 1944, are as specified in detail in the attached Schedule "A" amounting to a total of 1519.14 wine gallons or 2299.99 proof gallons for duty purposes, and a total of 1471.35 wine gallons or 2227.3 proof gallons for tax purposes, which quantities, are the same as the quantities found by the U. S. gauger upon his original gauge of August 25, 1944.

(8) That warehouse entry 295 was reliquidated on March 27, 1946, at which time an allowance in duties upon 1913.83 proof gallons, and an allowance in taxes upon 1913.9 proof gallons, as found upon the regauge on January 18, 1946, (not 2299.99 proof gallons for duty purposes or 2227.3 proof gallons for tax purposes as assessed under the original liquidation of August 25, 1944) was made for duty and tax purposes upon the destroyed spirits contained in the said 32 barrels, as shown in detail in the attached Schedule "A".

(9) That upon the liquidation of December 4, 1944, no taxes were assessed upon the spirits contained in barrel number 55 under warehouse entry 295 as this barrel was reported empty by the U. S. government inspector upon arrival in bond at Philadelphia, but that duties at $2.00 per proof gallon were assessed upon a quantity of 72.22 proof gallons, and that upon the reliquidation of March 27, 1946 covering the destroyed spirits, no allowance was made for the duties as assessed upon the original liquidation of August 25, 1944 ($2.00 per proof gallon upon 72.22 proof gallons).

(10) That this protest was filed on May 1, 1946, against the reliquidation as made on March 27, 1946; and that no timely protest was filed against the liquidation of December 4, 1944.

(11) That the official papers filed in connection with warehouse entry 295 may, with the consent of the court, be received into evidence.

(12) That the protest is abandoned as to all merchandise not referred to herein and the right to further amendment and first docket call is hereby waived. The protest is submitted upon this stipulation and the official entry papers.

The plaintiff, in this protest as amended, claims, without waiving any claims for a refund of duties and/or taxes on the quantities of spirits contained in any specific barrels specified in Schedule "A", that all duties at $2.00 per proof gallon on 2299.99 proof gallons (rather than only 1913.83 proof gallons allowed on reliquidation) and all taxes at $9.00 per proof gallon on 2227.3 proof gallons (rather than only 1913.9 proof gallons allowed on reliquidation) should be refunded on the 32 barrels of spirits specified in the attached Schedule "A"; citing *Harrison Corp.* v. *United States*, 10 Cust. Ct. 16, C. D. 715; *United States* v. *Somerset Importers, Ltd.*, 33 C. C. P. A. (Customs) 138, C. A. D. 328; *Austin Nichols & Co., Inc.* v. *United States*, 22 Cust. Ct. 33, C. D. 1155; and *Dixie Bottle & Beverage Company* v. *United States*, 23 Cust. Ct., Ab. 53809.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

## SCHEDULE "A"

### Liquidation of 12/4/44

| | Liquidated Duty | | | Liquidated Taxes | | Reliquidation of 3/27/46— Amounts allowed on Destruction—Wine gallons for Duty and Tax allowance purposes as found on 1/18/46 upon regauge |
|---|---|---|---|---|---|---|
| Barrel Number | Wine Gallons | Proof Gallons | Liq. Proof | Wine Gallons | Proof Gallons | |
| 1 | 46.83 | 71.1 | 152 | 46.83 | 71.1 | 35.41 |
| 2 | 47.64 | 71.9 | 151 | 47.64 | 71.9 | 42.15 |
| 10 | 46.68 | 70.4 | 151 | 46.68 | 70.4 | 39.13 |
| 11 | 48.33 | 72.9 | 151 | 48.33 | 72.9 | 42.70 |
| 16 | 46.82 | 70.7 | 151 | 46.82 | 70.7 | 42.43 |
| 17 | 46.41 | 70.54 | 152 | 46.34 | 70.4 | 17.88 |
| 19 | 46.82 | 70.7 | 151 | 46.82 | 70.7 | 42.01 |
| 22 | 46.69 | 70.9 | 152 | 46.69 | 70.9 | 43.94 |
| 23 | 48.27 | 73.3 | 152 | 48.27 | 73.3 | 43.11 |
| 27 | 47.30 | 71.4 | 151 | 47.30 | 71.4 | 40.02 |
| 31 | 48.81 | 73.7 | 151 | 48.81 | 73.7 | 44.55 |
| 38 | 49.51 | 75.2 | 152 | 49.51 | 75.2 | 42.49 |
| 48 | 48.89 | 74.3 | 152 | 48.89 | 74.3 | 45.73 |
| 49 | 49.03 | 74.5 | 152 | 49.03 | 74.5 | 42.91 |
| 51 | 49.03 | 74.5 | 152 | 49.03 | 74.5 | 39.81 |
| 55 | 47.51 | 72.22 | 152 | 0 | 0 | 0 |
| 58 | 47.37 | 71.5 | 151 | 47.37 | 71.5 | 43.52 |
| 67 | 47.64 | 71.9 | 151 | 47.64 | 71.9 | 41.88 |
| 69 | 47.71 | 72.0 | 151 | 47.71 | 72. | 32.20 |
| 70 | 49.58 | 75.3 | 152 | 49.58 | 75.3 | 46.14 |
| 74 | 45.73 | 69.5 | 152 | 45.73 | 69.5 | 37.28 |
| 80 | 47.78 | 72.1 | 151 | 47.78 | 72.1 | 40.37 |
| 85 | 49.08 | 74.1 | 151 | 49.08 | 74.1 | 44.83 |
| 86 | 47.44 | 72.1 | 152 | 47.44 | 72.1 | 44.35 |
| 87 | 45.79 | 69.1 | 151 | 45.79 | 69.1 | 38.24 |
| 90 | 46.07 | 70. | 152 | 46.07 | 70. | 42.49 |
| 95 | 45.86 | 69.7 | 152 | 45.86 | 69.7 | 41.32 |
| 97 | 47.79 | 72.6 | 152 | 47.79 | 72.6 | 44.90 |
| 102 | 45.45 | 68.63 | 151 | 45.24 | 68.3 | 31.51 |
| 111 | 47.51 | 71.7 | 151 | 47.51 | 71.7 | 40.37 |
| 116 | 45.65 | 68.9 | 151 | 45.65 | 68.9 | 38.38 |
| 120 | 48.12 | 72.6 | 151 | 48.12 | 72.6 | 44.14 |
| 32 Bbls. | 1519.14 | 2299.99 | --- | 1471.35 | 2227.3 | 1256.19 at average of 152.35 proof gallons equals 1913.83 proof gallons (1913.9 proof gallons for I. R. Tax purposes) |

From the foregoing agreed statement of facts and an examination of the invoice and entry papers, it is clear that the 125 barrels of spirits were landed in New York and transferred to Philadelphia on an immediate transportation entry, and that the gauging to determine the imported quantity did not occur until the spirits were in the Philadelphia warehouse. At that time, it was discovered that in the portion of the shipment here involved, to wit, 32 barrels, 5 barrels

were leaking, 1 barrel was slack, and 1 barrel was entirely empty. The entry was liquidated on December 4, 1944, upon the basis of the quantity reported by the gauger, no allowance being made for loss from the slack or leaking barrels or for the missing quantity in the empty barrel, nor was protest filed against the collector's decision not to make allowance for the missing quantities.

All of the barrels of spirits were withdrawn from warehouse except the 32 barrels here in question. As to barrels numbered 25, 53, 63, 75, and 107, for which, according to the foregoing stipulation, an application was filed on November 29, 1946, for a certificate of importation for drawback purposes, and, for that reason, the protest herein was, as to such barrels, abandoned, we find that the protest does not include the barrels subject to said application.

The application and permit to destroy the 32 barrels of cane spirits in customs custody, customs Form 3499, was received by the collector on January 2, 1946. The inspector reported on the application that seven of the barrels had been recoopered, one had a leaking bung, two had leaking heads, and one was empty. The gauger reported that the quantity of spirits contained therein amounted to 1,256.19 wine gallons, or 1,913.83 proof gallons. The application discloses that the 32 barrels with their contents were destroyed under customs supervision. On March 27, 1946, the collector reliquidated the entry and refunded the duty assessed upon 1,913.83 proof gallons, and the tax assessed upon 1,913.9 proof gallons, rather than the duty and tax assessed upon the 32 barrels at the time they first entered warehouse. That is to say, although all of the whisky contained in the barrels in which it was originally imported, together with the barrel containers, was destroyed, the collector remitted only that portion of the duties and taxes assessed upon the whisky that was reported by the gauger upon the regauge. The duty and tax assessed upon the difference between the gauge upon entry and the regauge were not remitted, but, on the other hand, the collector made a demand upon the importer for the payment of such portions of the duty and tax. Upon the basis of such demand for payment this protest was filed.

This action was submitted upon the record without argument of counsel for the respective parties nor were there any briefs filed. The contentions of the plaintiff and the decisions upon which reliance is based are set out in the stipulation. No counter contentions are advanced by the Government. Apparently, therefore, it is agreed between parties that the contentions of plaintiff are well founded. According to plaintiff's contentions, all duties at $2 per proof gallon based upon 2,299.99 proof gallons, as determined at the original gauging, which was the basis of the liquidation of December 4, 1944, and all taxes at $9 per proof gallon based upon 2,227.3 proof gallons, which was the basis of the liquidation for internal revenue taxes on December 4, 1944, should be refunded to the plaintiff.

190

The plaintiff bases its claims upon the cases cited in the stipulation, to wit, *Harrison Corp.* v. *United States*, 10 Cust. Ct. 16, C. D. 715; *United States* v. *Somerset Importers, Ltd.*, 33 C. C. P. A. (Customs) 138, C. A. D. 328; *Austin, Nichols & Co., Inc.* v. *United States*, 22 Cust. Ct. 33, C. D. 1155; and *Dixie Bottle & Beverage Company* v. *United States*, 23 Cust. Ct. 226, Abstract 53809.

In the *Harrison* case, *supra*, two casks of wine were entered at the port of San Francisco. On examination at the appraiser's stores, one of the casks was entirely empty. The importer made an application to abandon the empty cask or have it destroyed under customs supervision. The application was denied by the collector who made a demand for the payment of duty upon the basis of a full cask. Although the cask was landed at the port of Los Angeles and transshipped to San Francisco and there entered for warehouse, the evidence indicated that the cask was empty when landed from the importing vessel. The court noted that section 557, Tariff Act of 1930, permitted merchandise entered under bond to be destroyed under customs supervision, and that the section provided that upon such destruction the entry shall be liquidated "without payment of duty and any duties collected shall be refunded." The court also noted that counsel for the Government contended that the importer was not entitled to relief under said section for the reason that the wine was not present for abandonment. However, the court held that the collector should have permitted the importer to abandon the cask for destruction, and that the duties collected thereon should be remitted. The *Harrison* case, *supra*, appears to be authority for the remission of all duties assessed upon barrel number 55, which was landed empty.

In *United States* v. *Somerset Importers, Ltd.*, *supra*, it was held that under paragraph 813 of the Tariff Act of 1930, the quantity of spirits upon which duty is assessed is not the quantity at the time of crossing the customs border, but the quantity determined at the time of entry at the port of destination to be ascertained before delivery from the gauger's return. The court also held that the refusal of the collector to make allowances where proper to do so becomes a protestable matter reviewable by the courts. The *Somerset* case, *supra*, has reference to the action before us insofar as the collector refused to make any allowances at the time of entry at the port of Philadelphia for any shortages found by the gauger in the 32 barrels in question. From schedule "A," *supra*, barrel number 55 appears to be the only portion of the imported whisky which was assessed upon a quantity not imported.

In *Austin, Nichols & Co., Inc.* v. *United States*, 22 Cust. Ct. 33, C. D. 1155, it was held that by reason of the amendment of paragraph 813 of the Tariff Act of 1930 by Public Law 612, there was no assessment of duty on alcoholic beverages lost subsequent to importation for any reason before withdrawal from bonded supervision of the customs

to enter consumption. That decision also stressed the point that Public Law 612 had a retroactive effect insofar as it imposed a duty upon the collector to reliquidate all entries against which protests were filed under the provisions of section 514, Tariff Act of 1930, and not finally decided. It was also held that duties taken upon quantities of beverages larger than the quantities subject to the imposition of internal revenue taxes should be refunded. The *Austin, Nichols* case, *supra*, is applicable to the case at bar inasmuch as the quantity, by reason of the filing of the protest herein under the provisions of paragraph 514, has not been finally decided. However, the collector has assessed duty and taxes upon the same quantity, which would seem to remove the *Austin, Nichols* case from consideration here. But the court observed in that case, relative to internal revenue taxes assessed upon alcoholic beverages, the following:

As held in the decision, as promulgated, of *Gelpi* v. *United States*, 4 Cust. Ct. 373, Abstract 43072, internal revenue taxes are imposed upon liquors in bond, whether imported or domestic, upon the basis of the quantity shown by the gauge at the time they are withdrawn from customs bonded warehouses or public stores for consumption. Thus, under the broad language of Public Law 612, all liquors are dutiable upon quantities withdrawn from customs warehouses or public stores for consumption. * * *

In the case of *Dixie Bottle & Beverage Company* v. *United States*, 23 Cust. Ct. 226, Abstract 53809, the question involved was whether certain spirits which were repacked in warehouse and which were lost during the repacking from the entered quantity, amounting to 150.29 gallons, should be assessed with duty. The protest was filed before the enactment of Public Law 612, and under the law as announced by the courts, duty was properly assessed thereon. However, by reason of the enactment of Public Law 612, it was held that the plaintiff was entitled to have all duties taken upon the 150.29 gallons refunded inasmuch as internal revenue taxes were not assessed thereon. There is no new point raised in the *Dixie* case so far as the action before us is involved.

The question before the court is whether or not duty and internal revenue taxes should be refunded upon alcoholic beverages abandoned to the Government for destruction upon the basis of the entered gauge or the gauge taken immediately prior to the destruction of the liquors.

There are, however, cases directly in point. In the case of *Casazza & Bro.* v. *United States*, 13 Ct. Cust. Appls. 627, T. D. 41481, certain wine was entered for warehouse, the duties assessed, and the entry liquidated. Later, an application was filed by the importer to have the wine destroyed under the provisions of section 557, Tariff Act of 1922. It was conceded that no wine had ever been withdrawn from the containers. The collector ordered a regauge of the wine and destroyed what remained, calling upon the importer to pay duties upon the quantity represented by the difference between the amount

actually destroyed and that originally imported in the particular casks. The importer filed its protest against the decision of the collector, contending that it is to be presumed that the Government had in its custody what was originally delivered to it, and "when the Government destroys what it has, then the importers have done all they can do, and should be discharged as to their bond."

The appellate court, in holding that no duties were applicable to a quantity of merchandise determined by the difference between the entered gauge and the gauge at the time of destruction, succinctly stated as follows:

We can not escape the conviction that the procedure adopted here by the collector is not doing complete justice to these importers. The collector did not regauge the wine when he reliquidated under the Tariff Act of 1922, but took the original gauge as correct. Upon what theory, then, can he justify his act in regauging it before he destroyed it? If the gauge is good for duty purposes, when money is to be taken from the purse of the importers, why is it not good when the importers seek to abandon and destroy their goods? Our customs laws, necessarily highly technical and calling for a close construction, are also intended, so far as may be possible, with due regard for the purposes for which such laws are enacted, to be just and fair. We have, on several occasions, suggested that all the Government ought to seek and obtain, is the duties which justly accrue, according to law, upon the goods which enter into the commerce of our country. Here the importers did all they could to comply with the law, and their bond should have been canceled upon the destruction of their goods by the collector.

Following the decision in the foregoing case, which not only stands as the law, but is based on sound reasoning, no duty should have been demanded upon the 32 barrels of whisky destroyed under customs supervision.

Respecting the plaintiff's contention that the collector erroneously assessed internal revenue taxes upon the entered gauge, and refused to remit such taxes other than upon the portion of the whisky destroyed, we find that in an opinion written by our able and distinguished former colleague, Judge William J. Keefe, this court held in *Paul Gelpi & Sons, Inc.* v. *United States*, 4 Cust. Ct. 373, Abstract 43072, that an internal revenue tax was illegally collected upon an importation of Cuban rum insofar as such tax was levied upon ninety-five 1-gallon demijohns, the contents of which were lost. The court observed that internal revenue taxes are imposed upon the basis of the quantity shown by the gauge at the time it is withdrawn for consumption. In the case of *Fritz* v. *United States*, 73 Treas. Dec. 1045, T. D. 49637, the collector assessed internal revenue taxes on the quantity shown by the entered gauge rather than the regauge taken before withdrawal from the customs bonded warehouse. The court held that the collector acted contrary to the provisions of the United States Code, section 1150 (a) (1), for where there was a regauge of liquors before withdrawal, the internal revenue tax should be computed upon the basis of the quantity withdrawn rather than upon the entered quantity.

In the case of *Louis T. Snow & Co.* v. *United States*, 21 Cust. Ct. 13, C. D. 1118, where 586 bottles of Scotch whisky, upon reaching their destination under an immediate transportation entry, were found intact but empty of their contents, the plaintiff contended that the internal revenue tax exacted upon the empty bottles as though they were full was not legally taken. The court found that the plaintiff's contention was well taken and held that such internal revenue taxes should be refunded.

From the foregoing decisions it is abundantly clear that the law is well settled that internal revenue taxes are only assessed upon such quantities of alcoholic beverages as are withdrawn from bonded warehouse for consumption. The 32 barrels of whisky in question were destroyed together with their contents, no withdrawals for consumption having been made therefrom. Since the Internal Revenue Code provides that the tax shall be paid when distilled spirits are withdrawn from bond, taxes collected upon spirits which were destroyed under customs supervision and never withdrawn from bond clearly were assessed upon spirits not subject to the levy of such taxes.

For the reasons stated, judgment will be entered in favor of the plaintiff directing the collector to reliquidate the entry and refund all duties and taxes collected upon the 32 barrels of whisky.