(C. D. 1059)

PABLO CORRAL *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 30, 1947)

*Harper & Harper* (*George R. Tuttle* and *Walter I. Carpeneti* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before CLINE and EKWALL, Judges

CLINE, Judge: This is a suit against the United States arising at the port of Los Angeles by protest against the collector's assessment of additional duty of 10 per centum ad valorem under section 304 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, on an importation of earthenware from Mexico, on the ground that it was not legally marked. The additional duty was assessed at the time of the original liquidation on goods valued at $243 in entry No. 1481 and on goods valued at $240 in entry No. 1454. Upon reliquidation, additional duty was assessed on goods valued at $484 and $476, respectively. The collector's answer to the protest contains the following statement:

The examiner in his return stated that 50 per cent of the merchandise was not legally marked. As a result additional duty of 10 per centum ad valorem, under Sec. 304 of the Tariff Act of 1930 as amended by T. D. 49646, was assessed on 100% of the merchandise for failure to redeliver or mark as required by Customs Form #4647.

At the trial, defendant called John C. Townsend, deputy collector in charge of the liquidating division at Los Angeles. He testified that entry No. 1481 covered 254 packages, of which 156 were crates of earthenware; that 23 packages were examined; that entry No 1454 covered 179 crates, of which 23 were examined; that the examiner found approximately 50 per centum of the merchandise not legally marked; that the collector's office requested redelivery of the balance, but that the importer failed to return the merchandise. The witness stated that in each instance the collector originally assessed the additional duty on the basis of 50 per centum of the entire shipment, but upon reliquidation duty was assessed on 100 per centum of the merchandise which had not been redelivered, and on 50 per centum of the merchandise in the appraiser's stores. He added that there had never been a segregation of the marked and the unmarked merchandise by the importer, but that the merchandise before the examiner had been separated, indicating that 50 per centum thereof was not marked. On cross-examination, Mr. Townsend testified that he did not know that the goods not examined were not marked; that at first he assumed that half was marked, and finally he assumed that none was marked.

The issue in this case is whether the marking duty was properly assessed.

Section 304 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides in part as follows:

SEC. 304. MARKING OF IMPORTED ARTICLES AND CONTAINERS.

(a) MARKING OF ARTICLES.—Except as hereinafter provided, *every article* of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States *shall be marked* in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. * * *

* * * * * * *

(c) ADDITIONAL DUTIES FOR FAILURE TO MARK.—*If at the time of importation any article* (or its container, as provided in subsection (b) hereof) *is not marked* in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) hereof) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), *there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem,* which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. Such duty shall be levied, collected, and paid in addition to any other duty imposed by law and whether or not the article is exempt from the payment of ordinary customs duties. The compensation and expenses of customs officers and employees assigned to supervise the exportation, destruction, or marking to exempt articles from the application of the duty pro-

vided for in this subsection shall be reimbursed to the Government by the importer. [Italics supplied.]

It is clear from this section that it is the duty of the importer to mark all articles of foreign origin and that upon failure to do so, an additional duty of 10 per centum ad valorem shall be assessed. In the instant case there is no evidence which shows affirmatively whether or not the merchandise not examined by customs officials was marked. Fifty per centum of the merchandise which was examined was properly marked, but there is nothing to show that the examination packages were representative of the other merchandise insofar as marking was concerned. Plaintiff has the burden of proving that all or a part of that merchandise was legally marked. He claims that from the fact that 50 per centum of the examination packages was properly marked, an inference may be drawn that 50 per centum of the balance was so marked, citing *United States* v. *Boyle Mfg. Co., Inc.*, 31 C. C. P. A. 1, C. A. D. 240. That case involved a claim for drawback on exported drums. It appeared that the vessel began to take on the drums prior to the expiration of 6 hours after the notice of intent to export had been filed with the collector, as required by the regulations. The question arose as to how many drawback drums were laden after 4:45 p. m. It appeared that the work began at 8 a. m.; that 2,205 units were loaded at an average of 120 units per hour; that the order of lading was first the units for Adelaide, Australia, then those for Melbourne, Sydney, Brisbane, and Freemantle. The court held that it was a fair inference that of the total number of units, 930 were loaded before 4:45 p. m., and 1,275 thereafter; that those destined for Freemantle, Brisbane, and Sydney, totaling 1,145 drums (of which 960 were drawback drums), were last in order of loading and were loaded after 4:45 p. m.

The facts in that case are not analogous to those in the instant case There, the record showed how many drums were actually drawback drums and their destination; therefore, from the rate of speed and the manner of loading, the court was able to find the number of drums laden after a certain time. In the instant case, we have nothing more than examination packages containing merchandise of which only 50 per centum was legally marked, which packages may or may not have been representative of the balance of the merchandise. There was no compliance with the collector's request that the balance of the merchandise be redelivered for examination; therefore, we cannot tell what percentage was legally marked.

Since the plaintiff failed to redeliver the merchandise to customs custody, he is required to pay the additional marking duty as assessed by the collector. We hold that the plaintiff has not sustained the burden of proving the allegations of his protest. The protest is overruled and judgment will be rendered accordingly.