(C. D. 1154)

M. A. HOENECKE *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 1, 1949)

*Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: A quantity of scoured wool, consisting of 420 bales, was imported at Minneapolis, Minn., and upon entry was classified and assessed for duty under paragraph 1102 (b) of the Tariff Act of 1930 at 37 cents per pound on the clean content thereof. There is no dispute as to the classification of the wool, the importer's contention being that duty was assessed upon the basis of too great a quantity as "clean content." The Government computed the duty upon a clean content of 99.5 per centum, whereas the importer claims the proper percentages are 94¾ per centum to 96¾ per centum as shown on the invoices involved. Importer's claim is based upon the allegation that in determining the clean content of the wool the customs officials failed to comply with the customs regulations authorized by the statute. Said regulations provide the method by which the clean content of wool is to be determined and further provide:

(e) The appraiser shall promptly notify the importer of record, the owner under section 485 (d) of the tariff act, or the transferee under section 557 of the tariff act, as amended, as the case may be, by mail of the percentage clean content

determined by the laboratory test. If such person within fourteen calendar days after the date of mailing of the notice of the appraiser's finding of percentage clean content, files with the appraiser a written request in duplicate for another laboratory test for percentage clean content, supported by an affidavit in duplicate on Form 6449, when such an affidavit has not previously been filed, such request shall be granted, provided the request appears to the appraiser to be made in good faith, and provided, further, that a second general sample, as provided for in paragraph (c) of this article, is available for testing, or that all packages or, in the opinion of the Bureau, an adequate number of the packages represented by the general sample are available and in their original imported condition. The second test shall be made upon the second general sample, if such a sample is available. If the second general sample is not available, the packages shall be reweighed, resampled, and tested in accordance with the provisions of this article. * * *. [Sec. 766, Customs Regulations of 1937, as amended by T. D. 50457.]

The regulations in the above form were in effect prior to the date of liquidation of the entry here involved, which took place on July 7, 1943, and are substantially the same as corresponding regulations of 1943 which became effective July 1, 1943. (See sections 13.14 and 13.15, Customs Regulations of 1943.)

The record consists of letters which passed between the plaintiff and the customs officials and between the collector and the Bureau of Customs, together with a stipulation made in open court as follows:

That on May 15, 1943 this entire shipment was released to the importer and delivered to the North Star Woolen Mills, Minneapolis, Minn.; that until June 16, 1943 an adequate number of the packages in their original imported condition were available at the premises of North Star Woolen Mills for resampling under Article 766 (e), Customs Regulations of 1937 as amended by T. D. 50457, or Section 13.14 (e), Customs Regulations of 1943;

That on and after June 16, 1943 an adequate number of the packages were not available for such resampling; that neither the importer of record, the owner, nor the transferee requested that two general samples be taken from a sampling unit, under Article 766 (c), Customs Regulations of 1937, as amended by T. D. 50457, or Section 13.14 (c), Customs Regulations of 1943.

A report of the United States Customs Laboratory at Boston, Mass., was also received as defendant's exhibit 2, which shows that the chemist at Boston reported a clean content of 99.5 per centum for this wool, based upon a test of a general sample submitted to said laboratory.

From the record as thus made the following appears. The laboratory report was received by the customs officials at Minneapolis on June 4, 1943. It is admitted on the part of the Government that the acting appraiser did not notify the importer by mail as to the result of said test until July 15, 1943. It is plain, therefore, that the appraiser did not "promptly notify the importer * * * by mail of the percentage clean content determined by the laboratory test," as required by the regulation, *supra*. Plaintiff in the brief filed contends that the failure of the appraiser so to do constituted a vital defect in the method used in determining the percentage of clean

content of this wool, and he alleges that as a result the only valid basis for assessment of duties is the percentage clean content appearing on the consular invoices. In answer to this contention, Government counsel replies that while it is true that the appraiser was tardy in sending written notice, he did comply with the regulations in that he notified plaintiff in writing, and that the delay did not deprive the importer of his right to a retest. Further the Government contends that because the plaintiff did not request a second general sample or did not retain adequate samples he thereby deprived himself of the benefit of a retest. We find no merit in this last-named contention in view of the stipulated fact that an adequate number of packages in their original imported condition were available for resampling under article 766 (e), supra, up to June 16, 1943. Inasmuch as the laboratory report was received by the customs officials at Minneapolis on June 4, 1943, the record indicates that had the notification in writing been given "promptly" as required by the regulations a retest could have been made. Under these circumstances, we hold that by his failure to comply with the regulations the appraiser deprived the importer of an opportunity to refute the percentage of clean content shown by the Government chemist's report, i. e., 99.5 per centum.

In the amended protest plaintiff contends that duty should be assessed upon the percentage clean content as shown on the invoices.

The decisions as to the probative force of invoices and invoice statements are not uniform. In *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T. D. 38400, a leading case on the subject, it was held that statements made on invoices have evidentiary value insofar as they are not discredited or impeached. It has also been held that where certain customs regulations are in force, which have not been complied with by the Government officials, the importer may show that fact, and may, if it has followed such regulations, establish the true dutiable value or quantity of the imported merchandise. See *Gallagher & Ascher* v. *United States*, 14 Ct. Cust. Appls. 38, T. D. 41548; *Penick & Ford* v. *United States*, 12 Ct. Cust. Appls. 432, T. D. 40611; and *McLaughlin & Freeman* v. *United States*, 21 C. C. P. A. (Customs) 446, T. D. 46946. The plaintiff here has shown that the regulations were not complied with by the Government officials. The record also shows that plaintiff complied with the regulations insofar as it devolved upon him to do so, but that by reason of the Government officials' failure to follow said regulations, plaintiff is unable to produce evidence as to the true quantity of dutiable wool, i. e., the percentage clean content, other than the statements on the invoices. Said invoice statements are offered as some evidence. They show percentages ranging from 94¾ per centum to 96¾ per centum clean content.

That the regulation here involved is reasonable and within the purview of the statute is not disputed. Compliance therewith is mandatory. *Penick & Ford* v. *United States, supra,* and cases therein cited; *Stone & Co.* v. *United States,* 7 Ct. Cust. Appls. 439, T. D. 37009; *United States* v. *Bracher & Co. et al.,* 13 Ct. Cust. Appls. 432, T. D. 41344.

Failure on the part of Government officials to comply with the regulation should not be allowed to deprive the importer of his right to refute the Government officials' finding of percentage clean content of the imported wool. We find no merit in the Government's contention that because the importer made no request for the taking of two general samples, he was charged with the duty of retaining sufficient wool to enable a retest to be made. An adequate quantity of this wool was available for resampling in its original imported condition, although not in Government custody, up to June 16, 1943, 12 days after the laboratory report was received at Minneapolis. Had notice of that test been promptly sent to the importer a second test might have been made in accordance with the provisions of section 766 (*e*), *supra.*

Under the circumstances of this case, we find that the percentage clean content shown on the consular invoices should be accepted as the basis for assessment. The reasoning of the court in the case of *Seagram* v. *United States,* 30 C. C. P. A. (Customs) 150, C. A. D. 227, is applicable to the instant case. There the court had before it for determination the question of whether the collector had assessed duty upon the legal quantity of certain whisky from Canada. The customs regulations promulgated under authority of the statute provided certain prescribed methods of gauging by the customs offiicials. The record disclosed that the prescribed methods had not been followed. The court held that the gauging was null and void, and that the only basis upon which the dutiable amount of whisky could be calculated was the amount contained in the invoices. We quote from the language of the court as follows:

The amount of whisky imported must be ascertained in order to levy duty. There is no way of ascertaining the amount of whisky imported in barrels except by gauging. The Secretary of the Treasury set out in article 1371 the methods by which whisky content must be gauged. The importer obviously had an interest in full compliance with the regulation. In our opinion such methods are mandatory upon the gaugers. Since the gaugers did not follow the weight method or the rod method prescribed in article 1371 it must necessarily follow that there was no legal gauging or measurement of any kind of the involved merchandise by the customs officials. *Penick & Ford (Ltd., Inc.)* v. *United States,* 12 Ct. Cust. Appls. 432, 438, T. D. 40611. Therefore the presumption of correctness attaching to the action of the collector is overcome and the only basis upon which the amount of whisky imported can possibly be calculated is the amount contained in the invoices.

So here the amount of clean content must be ascertained in order to levy duty. It is true that such ascertainment has been made by the customs officials in the instant case, as evidenced by the laboratory report in evidence. However, the pleadings, as we construe them, allege that this report is erroneous in that it shows too great a percentage of clean content for the wool. By reason of the failure of the customs officials to comply with the regulations, plaintiff has been deprived of an opportunity to successfully combat the correctness of the report by a retest.

The situation here presented is analogous to those customs cases in which the court has held the liquidation void where no notice of advance in value was sent to the importer. See *United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D. 42561, which has been followed consistently. So, here, we think the liquidation is invalid and we so hold.

Plaintiff's claim that the liquidation is invalid is therefore sustained and it is the finding of the court that the percentages clean content as shown on the consular invoices should be accepted in liquidation of the entry as the only valid basis for assessment of duty.

Judgment will be rendered accordingly.