(C. D. 1621)

Freedman & Slater, Inc. *v.* United States

United States Customs Court, Third Division

(Decided June 10, 1954)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel); *Philip Stein*, associate counsel; for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Harold L. Grossman, Mollie Strum*, and *Dorothy C. Bennett*, trial attorneys), for the defendant.

Before Ekwall and Johnson, Judges

Ekwall, Judge: This is a protest against the collector's assessment of an additional duty of 10 per centum ad valorem under section 304 (c), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, on tanned sheepskins, imported from Argentina, on the ground that they were not legally marked.

The pertinent provisions of the tariff act, as amended, are as follows:

SEC. 304. MARKING OF IMPORTED ARTICLES AND CONTAINERS.

(a) Marking of Articles.—Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such

manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

\* \* \* \* \* \* \*

(3) Authorize the exception of any article from the requirements of marking if—

\* \* \* \* \* \* \*

(D) The marking of a container of such article will reasonably indicate the origin of such article.

\* \* \* \* \* \* \*

(b) MARKING OF CONTAINERS.—Whenever an article is excepted under subdivision (3) of subsection (a) of this section from the requirements of marking, the immediate container, if any, of such article, or such other container or containers of such article as may be prescribed by the Secretary of the Treasury, shall be marked in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of such article, subject to all provisions of this section, including the same exceptions as are applicable to articles under subdivision (3) of subsection (a). \* \* \*

(c) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article (or its container as provided in subsection (b) hereof) is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) hereof) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. \* \* \*

(d) DELIVERY WITHHELD UNTIL MARKED.—No imported article held in customs custody for inspection, examination, or appraisement shall be delivered until such article and every other article of the importation (or their containers), whether or not released from customs custody, shall have been marked in accordance with the requirements of this section or until the amount of duty estimated to be payable under subsection (c) of this section has been deposited. \* \* \*

At the trial, plaintiff offered in evidence the entry, invoice, and accompanying papers in the instant case (plaintiff's exhibit 1); a deposition of Norman Frank Diaz, executed at Buenos Aires, Argentina, February 19, 1953 (plaintiff's exhibit 2); and the file in entry No. 733802 (plaintiff's exhibit 3). Defendant called Michel T. Blouin, examiner of merchandise at the port of New Orleans, and offered in evidence one sheepskin from the importation herein (defendant's exhibit A).

The imported merchandise consisted of 500 dozen tanned sheepskins, packed in 10 cases, marked ABV #1/10, entered at New Orleans on May 5, 1944. All but one case was released on May 6, 1944. That case was examined by Mr. Blouin on May 12, 1944, at which time he

noted on the invoice and summary sheets that the merchandise was not legally marked. There is also a statement that the importer was notified, but no copy of such notice is in the file. The case examined was released on June 26, 1944.

It appears from the official papers that the merchandise was purchased from Lorenzo Chelotti & Hno. of Buenos Aires, Argentina, by H. Elkan & Co., Inc., of New York and was shipped by A. B. Villamil, S. R., Ltd. Norman Frank Diaz, an employee of the shipper, stated in his deposition that he had inspected and packed merchandise, consisting of 879 dozen sheepskins, at the tannery of Lorenzo Chelotti. He explained that the hides were first measured in a measuring machine, after which he stamped each one with the words "Industria Argentina" by the use of a rubber stamp. He added:

\* \* \* On each skin the stamp was put. It serves also as a control for the tannery not to change the skins before packing, etc., once they have "Industria Argentina" it means the skin has passed inspection. Yes, when they came out I stamped them. I did not look at the marking if I stamped them, but I stamped each one.

The merchandise was packed in wooden cases which were marked "Industria Argentina" and "ABV." In the opinion of the witness, the words "Industria Argentina" indicated the country of origin.

According to Mr. Diaz, part of the merchandise he inspected and packed (that involved herein) was shipped to New Orleans on the SS. *Nemeha* and part to New York on the SS. *Robert Peter Ryder*. He said that the markings on the goods and cases in both shipments were the same. The entry papers in connection with the New York shipment (cases ABV 11/21) make no mention of marking (plaintiff's exhibit 3).

Mr. Blouin testified that he had examined 1 case of the 10 cases shipped to New Orleans and found that it contained 51 dozen first-grade sheepskins. He said that they usually come in bundles of a dozen; that most of the bundles are opened to check the square footage; and that he did not see any markings on any of the skins he examined herein. One skin from the case was received in evidence (defendant's exhibit A). No marking showing country of origin appears on it.

Mr. Blouin testified that the case itself was marked. He believed the words used were "Product of Argentine," but he was not positive. He stated that he did not know whether the merchandise was subsequently marked with the name of the country of origin, but apparently it was released without being so marked.

On this record, plaintiff claims that it has been established that both the goods and the cases were properly marked at the time of importation to indicate the country of origin. With this contention we cannot agree.

The sample of sheepskin received in evidence (defendant's exhibit A) is not marked, and Mr. Blouin testified that those he examined were not marked. While Mr. Diaz stated that he had stamped each skin, it is plain that he missed some of them. Since there is no evidence to show what percentage was marked and what was not, plaintiff has not sustained the burden of proving the allegations of its protest. *Pablo Corral* v. *United States*, 19 Cust. Ct. 9, C. D. 1059.

Plaintiff claims, however, that the containers were all marked, even if the merchandise was not, and that it was not necessary for the skins to be marked, citing an abstract from a bureau letter, dated June 19, 1931, 60 Treas. Dec. 11, 12, T. D. 44992 (4). Since that time, section 304 of the Tariff Act of 1930 was amended by the Customs Administrative Act of 1938 to provide that every imported article must be marked with the English name of the country of origin, unless the Secretary of the Treasury by regulation authorizes an exception under certain specified conditions. The ruling cited is not such a regulation. *Scaramelli & Co., Inc.* v. *United States*, 66 Treas. Dec. 702, T. D. 47398; *Mitsui & Co., Ltd.* v. *United States*, 73 Treas. Dec. 109, T. D. 49357; *New York Bolting Cloth Co.* v. *United States*, 1 Cust. Ct. 244, C. D. 56.

Plaintiff relies on *Hudson Shipping Company, Inc.* v. *United States*, 30 Cust. Ct. 116, C. D. 1507, but in that case there was a regulation that the marking of a container was sufficient if the container was sealed and the article sold to the ultimate purchaser without the container being opened. The merchandise in that case was sold in the condition contemplated. There is no such evidence in the instant case.

Furthermore, section 304, as amended, requires that the article (or, in some circumstances, the container) be marked in such manner as to indicate to the ultimate purchaser the English name of the country of origin. The marking required must clearly and unambiguously indicate that country; it must be more than a "hint"; it must be in the English language. *American Burtonizing Co.* v. *United States*, 13 Ct. Cust. Appls. 652, T. D. 41489; *P. Lorillard & Co., Inc.* v. *United States*, 24 C. C. P. A. (Customs) 90, T. D. 48412 (cert. den. 299 U. S. 586).

In the instant case, the words used on the skins that were marked and on the containers were "Industria Argentina." The word "Industria" is not an English word and, even if the phrase is translated "Argentine Industry," it does not indicate unambiguously that Argentina was the country of origin. In *William Camp Co.* v. *United States*, 24 C. C. P. A. (Customs) 142, T. D. 48623, it was stated that the legend "Packed in Japan" might not indicate the origin of most articles, although it was held sufficient as to fish. In *New York Bolting Cloth Co.* v. *United States, supra*, it was held that

marking containing the words "PASSED" and "By Silk Inspection Office. Imperial Japanese Government" did not clearly indicate the country of origin, but showed merely that the silk had been inspected and passed by agencies of the Japanese Government. Note that in the instant case, while Mr. Diaz gave his opinion that the words "Industria Argentina" indicated the country of origin, he also said that they meant the skin had passed inspection.

See also *S. Shapiro & Co.* v. *United States*, 57 Treas. Dec. 1043, Abstract 10801, holding the words "Irish Cottage Industry" did not comply with the statutory requirements, and *Ocean Leather Corp.* v. *United States*, 3 Cust. Ct. 463, Abstract 42585, where the legend "Productos Mex" was held insufficient because of the use of a foreign word and an abbreviation.

Although the merchandise herein apparently was released without the proper marking having been placed thereon, the importer is not relieved from the payment of the additional marking duty, since section 304 (c), Tariff Act of 1930, as amended, provides that payment of such duty shall not be avoidable for any cause.

For the reasons stated, we hold that the additional marking duty was properly assessed by the collector. The protest is overruled and judgment will be rendered for defendant.