(C.D. 2383)

F. STRAUSS & SON, INC., OF N.O. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 24, 1963)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiff.

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise involved in this protest proceeding consists of Scotch whisky, imported from England through the port of New Orleans and assessed with duty under 19 U.S.C.A., section 1001, paragraphs 217 and 802, as modified by T.D. 54108, and paragraph 810 (paragraphs 217 and 802, as modified by T.D. 54108, and paragraph 810, Tariff Act of 1930), at the rate of $1.35 per proof gallon and ¼ cent per pound on the bottles, and with internal revenue taxes under 26 U.S.C.A., section 5001(a)(1) (section 5001(a)(1), Internal Revenue Code of 1954), at the rate of $10.50 per proof gallon. No question is raised concerning classification or duty and tax rates. The importer claims that duty and taxes were assessed upon too large a quantity of the whisky.

The merchandise is described on the invoice as being 250 cases of Vat 69 Blended Scotch Whisky, each case containing 48 half-pint bottles of Scotch whisky. The invoiced quantity is designated as being 3 gallons per case for a total gallonage of 750 gallons. A warehouse entry was made for this importation on the basis of the invoiced quantity, and estimated duties and taxes were computed thereon accordingly.

At the time the merchandise was deposited in the bonded warehouse, one bottle of the whisky was withdrawn for sampling by the customs

laboratory. (The importation contained a total of 12,000 bottles, each bottle purportedly holding 8 ounces of Scotch whisky.) Before the sample was analyzed by the customs laboratory, 100 cases of whisky were withdrawn from the warehouse for consumption. Estimated duties and taxes were paid on this withdrawal on the basis of entered quantity of 300 gallons. Weeks later, the appraising officer received the sample report from the laboratory. The report states:

> The sample is Scotch whiskey.
>
> | | |
> |---|---|
> | Vol. of contents, 60° F (fl. oz.) | 8.4 |
> | Weight of glass bottle (oz. av.) | 9.0 |
> | Proof by volume, 60° F | 87.1 |
>
> Sample retained in laboratory.

Thereafter, the remaining cases of whisky in this importation were withdrawn for consumption in two separate lots of 75 cases each. And as in the case of the first withdrawal, estimated duties and taxes were likewise paid on the second and third withdrawals on the basis of entered quantities of 225 gallons and 225 gallons, respectively.

The total gallonage on which estimated duties and taxes were paid on this importation amounted to 750 gallons. On the basis of the laboratory report, the appraising officer reported the quantity for each bottle of the importation as containing the same quantity of whisky as that reported for the sample, namely, 8.4 ounces. In consequence, final duties and taxes were taken against this importation in liquidation on a total gallonage of 787.5 gallons.

The undisputed testimony of the importer's general manager is to the effect that the importer was not notified by customs officials at the port of entry until over a year after the sample was analyzed that the sample contained a quantity of whisky in excess of 8 fluid ounces; and that if notice of such fact had been promptly given, some of the merchandise from the same shipment could have been made available for additional sampling for as much as 35 to 40 days after the final withdrawal. And the broker who made entry on behalf of the importer testified, without contraindication, in the record that, whenever customs officials at the port of entry discovered a difference in quantity, it was customary for them to notify the importer of such fact through the broker within a short time after such discovery, so that the importer could arrange for the submission of additional samples taken from the importation for testing.

On these facts, it is the importer's contention that duties and internal revenue taxes should have been assessed herein upon the invoiced and entered quantity of 750 gallons of Scotch whisky, instead of on 787.5 gallons of such whisky. The Government takes the position that the importer failed to establish that the findings reflected in the sample report on which dutiable and taxable quantities were calculated, were incorrect, in consequence of which, the presumption of correctness attaching to the collector's assessment prevails.

Apart from the sample report, there exists no evidence of record as to the actual quantity of whisky that was contained in the other bottles of the involved importation which were not examined, such merchandise having passed into commerce before the occasion arose for the importer to look thereto for additional samples from this shipment for purposes of quantitative analysis. And although there exists of record no evidence of the inaccuracy of the laboratory report, with regard to the analysis made of the sample, nevertheless, the interpretation given this report, with regard to the quantity of whisky in each of the unexamined bottles, is rendered somewhat equivocal, in the light of the appraiser's following comment on the report:

> It should be noted, however, that this report was made on the basis of only one bottle sampled out of a total shipment of 12,000 bottles, and some variation in fill is normal and expected on this type of commodity.

The report, coupled with this observation of the appraiser, does not provide the court with a certainty that there was a uniform overfill in the unexamined bottles of the subject importation.

The defendant has urged upon us, in effect, the adoption of the "presumption of correctness" doctrine to sustain the collector's liquidation, in the absence of evidence as to the exact fill in the unexamined bottles of the involved importation. We are of the opinion that the instant record does not present a case for the application of the presumption contended for by the defendant. The question is whether, under the evidence of record, there has been compliance by the appraising officers at the port of entry with statutory and regulatory requirements of a mandatory nature, in the sampling of the involved merchandise while such merchandise was in customs custody.

The selection and examination of samples of imported merchandise are generally governed by 19 U.S.C.A., section 1499 (section 499, Tariff Act of 1930, as amended), which prescribes for examination a minimum number of 1 package in every 10 packages and 1 package for each invoice in the importation, unless the Secretary of the Treasury determines otherwise. However, with respect to wine and liquor imports, a fewer number of packages may be withdrawn for examination than is authorized in section 1499, *supra* (T.D. 49412). The minimum number of liquor packages, such as that here involved, which must be examined in order that there be compliance with the statute has not been specified or predetermined by special Treasury regulation or instruction. Such amount depends, in any given case, upon provisions set forth in 19 U.S.C.A., section 1001, paragraph 813 (paragraph 813, Tariff Act of 1930, as amended June 1948 by Public Law 612), which read:

> Notwithstanding any other provision of this chapter, the duties imposed on beverages in this schedule which are subject also to internal revenue taxes shall be imposed only on the quantities subject to such taxes;

provisions set forth in 26 U.S.C.A., sections 5001(a)(1) and 5006 (a)(1)(2) (sections 5001(a)(1) and 5006(a)(2), Internal Revenue Code of 1954); and provisions contained in section 16.5(d) of the Customs Regulations, which read:

> Duties and internal-revenue taxes on imported alcoholic beverages provided for in Schedule 8, Tariff Act of 1930, and subject to internal-revenue taxes shall be collected only on the number of proof gallons (or wine gallons if below proof), and fractional parts thereof, entered or withdrawn for consumption.

Applying these statutory and regulatory requirements to merchandise, such as that at bar, it will be noted that, in the ascertainment of dutiable and taxable quantities, the basis of inquiry necessarily shifts from a consideration of landed or entered quantities to a consideration of quantities which are withdrawn for consumption. As a corollary, the gauging and sampling of warehoused liquor imports to ascertain dutiable and taxable quantities of such merchandise are required to be performed only at the time such merchandise enters into consumption, thereby eliminating a multiplicity of gaugings and samplings for separate duty and tax purposes. *Austin, Nichols & Co., Inc.* v. *United States*, 22 Cust. Ct. 33, C.D. 1155, cited approvingly in *United States* v. *Josebra Company*, 41 CCPA 206, C.A.D. 552. In the instant case, we find evidence of such required deferment of sampling of warehoused liquor imports in the examiner's report of sample examination and appraisement which was filed on customs Form No. 6417. It will be noted therein that the examiner's findings, under the heading "Quantities," have been omitted therefrom. This omission clearly indicates that if sampling were required of this merchandise at this juncture for the purpose of ascertaining dutiable and taxable quantities, and not at the time of withdrawal, the making of this report would have constituted the appointed time and place for the examiner to have noted therein the excess quantity found in the sample. (Section 14.2(t), Customs Manual.)

In view of the foregoing statutes and regulations, it is clear that the minimum number of bottles of the involved importation which should have been withdrawn for sampling by customs officials at the port of entry is three—at least, one bottle from each separate lot of cases which were withdrawn for consumption, and on the occasion of each withdrawal. Of course, if the entire importation had been entered for consumption, or withdrawn for consumption, then, in either of such events, a single sample bottle of the whisky could properly have been deemed representative of the merchandise covered by such entry for sampling purposes, in the first instance. It will be observed in the instant record, however, that the sample bottle in question was taken from case number 146 *prior* to withdrawal of any merchandise for consumption. Consequently, this sample bottle of Scotch whisky

is not representative of the quantities of such whisky which were *withdrawn for consumption.*

At the time the involved merchandise was imported, Customs Manual procedures made no distinction between alcoholic beverages and other merchandise entered for warehousing, under the general instruction that such merchandise be weighed, gauged, or measured before, or at the time, the merchandise is deposited in the warehouse. It was not until after the involved entry was liquidated that section 8.31(a), *supra*, was first changed by Customs Manual amendment No. 594 to provide different sampling procedures for alcoholic beverages entered for warehousing, although the occasion which prompted such change had occurred earlier per force of Public Law No. 612, *supra*, and prior to the time that the entry at bar was made. As so amended, section 8.31(a), *supra*, read:

> When the bond required by section 8.31 of the regulations has been accepted, the collector shall issue a permit to the inspector on customs Form 7502–A to send the goods to the bonded warehouse, indicating thereon what goods are to be weighed, gauged, or measured. Weighing, gauging, or measuring shall be done before or at the time the goods are deposited in the warehouse, *except in the case of deposits of imported alcoholic beverages provided for in Schedule 8, Tariff Act of 1930, and subject to internal-revenue taxes, the dutiable and taxable quantities of which shall be determined from the results of gauging and sampling performed at the time of each withdrawal.* [Italics supplied.]

It is clear from the instant record that the warehouse permit and examination order at bar (customs Form 7502–A) were keyed to section 8.31(a), *supra*, as that section read prior to the effective date of Customs Manual amendment No. 594, *supra*, and that, pursuant to the prior instruction, the sample in question was withdrawn at the time the whisky was deposited in the warehouse, although action thereon was not completed until after the first withdrawal. Nevertheless, for the reasons noted, we conclude that the failure on the part of customs personnel at the port of entry to select and examine the requisite number of samples of the involved merchandise renders nugatory the findings made herein with respect to dutiable and taxable quantities of such merchandise which were withdrawn for consumption.

Apart from considerations of the number of samples which must be selected and examined in any given case in order to determine dutiable and taxable quantities of imported merchandise, such as that at bar, there are other regulations which must be reckoned with whenever it is ascertained by customs officials that the selected samples or any of them contain an "excess quantity." In effect at the time the instant merchandise was imported was section 8.29(c) of the Customs Regulations, as amended by T.D. 53412. As so amended, section 8.29(c), *supra*, reads in part:

> If the examiner . . . finds that the quantity imported exceeds the entered quantity, and the estimated aggregate of the increase in duties exceeds $15, he

shall promptly notify the importer of record, on such form as may be appropriate at the port, . . . as to the excess quantity found. . . . The notice shall be furnished at the time the examination packages are released or as soon thereafter as the information is received by the examiner, whether the merchandise has been examined at the appraiser's stores or elsewhere. . . .

In the nature of things, it would seem to be of paramount importance to an importer to be informed by customs officials of any change in the dutiable and taxable quantities of merchandise which he has imported into this country, both from the standpoint of the administration of customs laws and regulations, particularly those of a penal nature (see 19 U.S.C.A., section 1592; 19 C.F.R. section 23.6), as well as from the standpoint of good commercial practice. Our task here is to determine whether the giving of such a notice, as that provided for in section 8.29(c), *supra*, is a prerequisite to a valid determination of the dutiable and taxable quantities based upon the sample examination here involved.

Defendant's counsel contends that section 8.29(c), *supra*, is only applicable to importations covered by consumption entries, pointing out the fact that this section is set forth in the Customs Regulations under the heading "Entry for Consumption." However, our attention has been called by plaintiff's counsel to section 8.30(d) of the Customs Regulations, which is set forth in the regulations under the heading "Entry for Warehouse." Among other things, section 8.30(d), *supra*, makes applicable to the appraisement of merchandise covered by a warehouse entry the same procedure which is applicable to the appraisement of merchandise entered for consumption.

We think the term "appraisement of merchandise" embraces the sampling of imported merchandise by an appraising officer, and the rendition of a report of findings by such officer to interested parties. Certainly, the ascertainment of quantity is a related, if not an integral, part of the finding of value process. And the fact that the responsibility for ascertaining quantity has been entrusted to the appraising officer, rather than to the collector, makes its identification with appraisement all the more plausible.

Moreover, we find nothing unique or unusual in the use of the general, rather than the specific, with respect to the language employed in one regulation to convey the same meaning as that which is conveyed in a preceding and more precisely worded regulation. Incorporation by reference is a common technique used by draftsmen of legal documents to avoid unnecessary repetition of language. And such appears to have been the purpose of the draftsman here. Furthermore, no cogent reason has been suggested to us for a differentiation between consumption entries and warehouse entries in this regard.

All things being considered, we are of the opinion that sections 8.29(c) and 8.30(d), *supra*, should be read together. When so read, these two regulations imposed a clear and specific duty upon the

examiner to promptly notify the importer at bar of the excess quantity of Scotch whisky which was found in the sample by the Government's chemist, in view of the fact that the aggregate increased duties resulting therefrom exceeded $15. This the examiner failed to do.

The apparent, though unexpressed, purpose of such notice is to afford the importer an opportunity to verify or challenge, if need be, the findings of the Government pertaining to the quantity of merchandise which the importer is entering. For it is the inherent right of the importer who carries the onus of proof, to marshal evidence and undertake to refute the findings of the Government's chemists. *Rolls Razor, Inc.* v. *United States*, 6 Cust. Ct. 271, C.D. 480, rehearing denied, 6 Cust. Ct. 679, Abstract 46045; *Cincinnati Terminal Warehouse, Inc., et al.* v. *United States*, 2 Cust. Ct. 265, C.D. 139. The obvious result of the examiner's failure to give the importer the requisite notice is that the importer was lulled, however unwittingly, into a false sense of security regarding the quantities of Scotch whisky which it imported, in consequence of which, the importer was unable to marshal evidence at the time of trial to refute the Government's evidence of excess quantity.

Inasmuch as the procuring cause of the dearth of evidence of quantity is directly traceable to the failure on the part of responsible customs officials at the port of entry to select for examination the requisite number of samples of the involved merchandise as the several occasions demanded, and to promptly apprise the importer of the findings pertaining to the single sample which was examined, the only basis upon which dutiable and taxable quantities of the Scotch whisky can be ascertained is the invoiced quantities.

*Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 CCPA 150, C.A.D. 227; *M.A. Hoenecke* v. *United States*, 22 Cust. Ct. 28, C.D. 1154. For the reasons stated, we, therefore, conclude that the invoiced quantities of the subject merchandise constitute the proper quantities for the assessment of duties and internal revenue taxes on such merchandise which was withdrawn for consumption under the involved entry. Consequently, the protest is sustained.

Judgment will be entered accordingly.