(C.D. 2408)

A. N. DERINGER, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 19, 1963)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges; RICHARDSON, J., concurring in the result

DONLON, Judge: The issue here, succinctly stated, is whether additional duties, under section 304(c), Tariff Act of 1930, as amended, on imported sewing machine attachments not marked to show that Japan was the country of origin, are to be remitted. Plaintiff contends it is not liable for marking duties because the collector failed to give plaintiff a notice, customs Form 4647, to surrender the merchandise.

The merchandise was entered as American goods returned and was released prior to entry. Sometime later it was established that the merchandise actually was of Japanese origin.

Plaintiff's position seems to be that there is no liability to marking duties on merchandise which has been released from customs custody, unless and until the collector has first demanded redelivery of the merchandise for legal marking or for export or destruction under customs supervision on the form prescribed pursuant to section 11.11 of the Customs Regulations. (19 CFR 11.11.)

In its protest, plaintiff also claimed that "the merchandise should be exempted from the requirements of marking under Sec. 304(a)(3)(F) or Sec. 304(a)(3)(H)." However, the claim for marking exemption is not argued. Indeed, no evidence was introduced on trial in support of that claim. Therefore, we deem that the claim to marking exemption has been abandoned, and it is overruled.

The facts are not in dispute. As adduced on trial, they are substantially as follows:

Certain sewing machine attachments were imported from Canada at Champlain, N.Y., and were entered on March 26, 1957, by A. N. Deringer, Inc., plaintiff herein, for account of Arrow Sewing Machine Co., Inc., Atlanta, Ga. The entry papers, which are of record, show that the merchandise was entered as a product of the United States, claimed to be duty free as American goods returned, under paragraph 1615, Tariff Act of 1930, as amended. Form No. 129, Foreign Service, signed by Arrow Sewing Machine Co., Ltd., at Montreal, Province of Quebec, but not declared, was filed with the entry papers, stating that 2,000 sewing machine attachments of United States origin, in 10 boxes, were shipped on March 21, 1957, presumably from Montreal and presumably referring to the merchandise here in issue. Since the statement was not declared before an officer of the United States, it has no probative value. Indeed, it is difficult to understand why plaintiff, an experienced customs broker, relied on it in making the entry.

Although the papers show that the merchandise was released on *April* 23, 1957, under an immediate delivery permit, testimony ad-

duced on trial was that the merchandise was released on *March* 23, 1957, 3 days prior to entry. The court takes judicial notice that immediate release under Customs Regulations, section 8.59(c), is release prior to entry, and concludes that the appraiser's stamped date, April 23, 1957, is erroneous, that the date of release was March 23, 1957, as testimony shows. We find, therefore, that the merchandise in issue was released for consumption on March 23, 1957, prior to entry.

Thereafter, on May 8, 1957, plaintiff wrote to the deputy collector of customs, Champlain, N.Y., a letter as follows:

May 8th, 1957
Re: Our 18525

Deputy Collector of Customs
Champlain, New York
Dear Sir:

We are enclosing herewith a letter received from the Canadian customs broker who handled the forwarding of the merchandise covered by Consumption Entry F–05457 of March 26th, 1957.

At the time of release of this merchandise, all papers in our possession indicated that the shipment was of U.S. origin, and was entered under Paragraph 1615.

We are now tendering duties in the amount of $250.00 on this shipment, and request that our bond for a Certificate of Exportation be cancelled. A consular form 138 is also enclosed to replace the consular form 129 originally filed.

Sincerely,
/s/ L. W. KELLEY
A. N. DERINGER, Inc.

LWKelley/1

The enclosure letter is on the letterhead of Milgram & Company, Ltd., 407 McGill Street, Montreal 1 (described on the letterhead as "CUSTOMS BROKERS, FORWARDERS AND AGENTS"), and is as follows:

May 6th, 1957.

A. N. Deringer Inc.,
Champlain, N.Y.,
U.S.A.
Dear Sirs:

With reference to your 18525, in your request for Canadian inward manifest, we find that in checking our records and contacting the shipper in Montreal which is, Arrow Sewing Machine Co. Ltd., they tell us that now a mistake was made and that these goods are, in fact, Japanese.

Enclosed, please find invoices form 138, covering this shipment. Please clear this shipment as duty paid shipment and accept our apologies for any inconvenience we have caused you.

Sincerely,
MILGRAM & COMPANY LTD.
/s/ H. MILGRAM
H. Milgram

HM: HS
Encl.

On May 10, 1957, plaintiff paid $250, which was received by the collector at Champlain as "supplemental duty." This appears to be the regular duty, at the rate of 10 per centum ad valorem, under paragraph 372, Tariff Act of 1930, as modified, on the entered value of $2,500.

On March 28, 1958, the deputy collector at Champlain gave plaintiff notice on customs Form 4301 that the merchandise had been appraised and that the appraised value exceeded the entered value. Entry was at $2,500. Appraisal was at $5,999. The appraiser had, on March 18, 1958, reported the advance in value to the collector at Champlain and reported also that the merchandise was not legally marked.

Liquidation did not occur until January 9, 1962, nearly 4 years later. Duties then ascertained were $1,199.80, being the regular 10 per centum duty on the appraised value of $5,999, or $599.90, plus marking duty at 10 per centum, also $599.90. Only $250 had previously been paid. The increased duty of $949.80 was paid March 5, 1962. The protest does not contest the regular duty. It contests only the marking duty of $599.90.

Plaintiff's representative, Mr. Laurence W. Kelley, testified that these Japanese sewing machine attachments were exported from the United States to Canada through the port of Champlain, but he could not recall when the exportation occurred. This is the only proof of export, and it is inadequate. Moreover, it is not disputed that export, if such was the fact, was not done under customs supervision, as the antimarking regulations require.

It is conceded that this is Japanese merchandise. Plaintiff has not introduced a scintilla of evidence to overcome the presumption that the collector was correct in finding that the merchandise was not legally marked.

It was stipulated on trial that customs Form 4647, notice that goods must be redelivered and legally marked or exported or destroyed, was not issued to plaintiff. That fact, also, is not in dispute; but there is some evidence suggesting that plaintiff's representative at Champlain, to whom notice would have gone, knew the merchandise was not marked. Indeed, since the merchandise had been released, on plaintiff's recognizance, even before entry, the examination revealing nonmarking could only have been made then.

Plaintiff argues, in effect, that when goods have already been released from customs custody at the time when entry as American goods returned is found to be erroneous, there is no liability for the special marking duty unless and until the collector has issued notice on customs Form 4647. In other words, such notice is a condition precedent to marking duty liability. Defendant denies this.

The question, then, is whether the notice prescribed by the Customs Regulations is a condition basic to marking duty liability.

Section 304(c), Tariff Act of 1930, as amended, reads as follows:

(c) Additional duties for failure to mark.

If at the time of importation any article (or its container, as provided in subsection (b) of this section) is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) of this section) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. Such duty shall be levied, collected, and paid in addition to any other duty imposed by law and whether or not the article is exempt from the payment of ordinary customs duties. * * * [19 U.S.C. § 1304(c).]

The conditions of liability laid down by Congress in section 304(c) are two: First, that the article is not, at the time of importation, marked as the statute requires; and second, that, when not so marked at the time imported, it has not *prior to liquidation* been (a) marked properly under customs supervision, or (b) exported under customs supervision, or (c) destroyed under customs supervision. When these events concur, then the special marking duty is imposed, and it "shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause."

If the merchandise here was, in fact, adequately marked at the time of its importation, that has not been proven. It is conceded that after importation it was neither marked nor exported nor destroyed *under customs supervision*. Can this court, under such circumstances, remit payment of the marking duties for any cause?

We are of opinion that we may not do so. Congress has spoken clearly, seldom more so, and the court has a duty to apply the law.

Here, we are not dealing with a regulation which is prescribed by Congress as antecedent to the imposition of liability, or to ascertainment of the amount of liability. We are here dealing with an administrative regulation evidently intended to assist importers to meet the statutory conditions basic to tax avoidance. This is a fair and reasonable administrative procedure, and failure to adhere to the prescribed procedure is certainly inadequate administrative practice, which we do not condone.

While the equities do not influence decision, it may also be noted that plaintiff, an experienced customs broker, was the one who as-

certained that this merchandise was not American goods, as it had been entered, but was of Japanese origin, and so notified the collector. Plaintiff, as a licensed customs broker, is presumed to know what then had to be done, if marking duty liability was to be obviated. If plaintiff chose to rest on a regulation calling for some one else to move, and ignored the clear requirement of the statute, it surely may not avoid liability under section 304(c) by pleading that it did not receive a notice telling it what it knew the statute required it to do.

In *Freedman & Slater, Inc.* v. *United States*, 32 Cust. Ct. 325, C.D. 1621, there was claim to exemption from marking requirements on sheepskins, in reliance on a bureau letter. The late Judge Ekwall wrote the opinion for this division and held that such letter could not be deemed the regulation authorizing an exception from marking, under specified conditions, which Congress expressly authorized in section 304(b). As earlier noted, no such exception or regulation is authorized in section 304(c). Judge Ekwall, referring to section 304(c), said:

Although the merchandise herein apparently was released without the proper marking having been placed thereon, the importer is not relieved from the payment of the additional marking duty, since section 304(c), Tariff Act of 1930, as amended, provides that payment of such duty shall not be avoidable for any cause. [P. 329.]

We have reviewed the cases which plaintiff has cited. We deem them not pertinent to the law and facts here. The most recent is *F. Strauss & Son, Inc., of N. O.* v. *United States*, 50 Cust. Ct. 22, C.D. 2383. There, we held that the notice in issue was required both by customs laws and regulations. Here, we find that the law required no such notice as that here involved.

Those who import goods into the United States accept certain responsibilities that have been laid on them by Congress. One such responsibility, and an important one, is to see that imported merchandise of foreign origin is properly marked to show the country of origin, before it enters into the commerce of the United States. There may be question as to whether or not particular marking meets the statutory requirements, or whether in a particular case merchandise is exempted from the marking requirement. If not marked, and not exempted, and if in such case the merchandise is not destroyed or exported under customs supervision, the marking duties may *not* be remitted or avoided for any cause. That is the law as Congress enacted it.

The protest is overruled. Judgment will enter accordingly.

### CONCURRING OPINION

RICHARDSON, Judge: I concur in the result.